[Crim. No. 266.   Fourth Appellate District.—September 24, 1934.]

THE PEOPLE, Respondent, v. GUADALUPE M. FLORES, Appellant.

Davies & Wallace for Appellant.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was charged with having murdered one Julio Contreras in the city of Oceanside, on December 16, 1933. On the evening of that day the defendant met a friend with whom he had several drinks of beer and whisky. Some time after 11 o'clock that night the two entered a pool hall where the defendant purchased a glass of beer for himself and one for his companion. An argument of some kind took place in the pool hall between the defendant and Julio Contreras, during which the latter accused the defendant of being ''cheap'' because he did not offer to treat him and his party. About 12 o'clock the pool hall closed and the deceased and his party left, followed almost immediately by the defendant and his companion. Shortly thereafter the defendant stabbed Contreras with a knife, inflicting a wound which later caused his death. A jury found him guilty of murder in the first degree, recommending life imprisonment. From the judgment and from an order denying a motion for a new trial, this appeal is taken.

The first point raised is that the court erred in denying a motion to set aside the information. This is based upon the contention that the justice's court in which the preliminary examination of the appellant was held had no legal existence. In support thereof it is stated that this justice's court was created in 1931, and it is then argued that chapter 458 of the Statutes of 1931, purporting to amend section 4233 of the Political Code, and providing, among other things, for an increase in the number of justices of the peace in the township of which the city of San Diego is a part, is unconstitutional and void since it contains matter which is not expressed in its title, in violation of section 24 of article IV of the state Constitution. The title of the amendatory act referred to reads as follows: "An act to amend section 4233 and to repeal section 4233a of the Political Code, relating to the salaries, fees and expenses of officers in counties of the fourth class." (Stats. of 1931, p. 1007.) It is argued that since this title makes no mention of increasing the number of justices' courts in this township, that portion of the amendment is void and, consequently, no preliminary examination of this appellant was had.

It may first be observed that nothing appears in the record to show who was the committing magistrate or in what justice court the preliminary examination was held, and it may not be assumed that the appellant was illegally committed in the absence of any proof. (*People* v. *Williams,* 84 Cal. 616 [24 Pac. 145]; *People* v. *Ramirez,* 139 Cal. App. 380 [33 Pac. (2d) 848].)

Considering the matter on its merits, we think section 4233 of the Political Code, as amended in 1931, is not open to the objection here made. It is well settled that the constitutional requirement referred to should be liberally construed and that the title of an act need neither set forth all details of the act nor serve as a complete catalog of its contents. In the case of *In re Bear,* 216 Cal. 536 [15 Pac. (2d) 489, 83 A. L. R. 1402], the court said: "We have had occasion to point out in an increasing number of decisions that a liberal rule should prevail in the interpretation of the constitutional requirement of a descriptive title, and that nothing more is required than a reasonably intelligent reference to the subject of the legislation. ' . . . The title of an act need not embrace an abstract or catalogue of its con-

tents, but need only contain a reasonable intimation of the matters under legislative consideration. . . . The general subject need not appear in the title, if it is clearly disclosed or readily inferred from the details expressed.' (*Heron* v. *Riley*, 209 Cal. 507, 510, 511 [289 Pac. 160, 161]; . . . )''

It has frequently been held that the title of an amendatory act is sufficient when it sets forth the fact that the same is an act to amend a particular section of one of the codes. (*People* v. *Parvin*, 74 Cal. 549 [16 Pac. 490]; *Beach* v. *Von Detten*, 139 Cal. 462 [73 Pac. 187]; *People* v. *Oates*, 142 Cal. 12 [75 Pac. 337]; *Estate of Elliott*, 165 Cal. 339 [132 Pac. 439]; *People* v. *Rambaud*, 78 Cal. App. 685 [248 Pac. 954].) The appellant concedes this general rule but insists that the act here in question cannot come within this rule because, after naming the code section to be amended, the title thereof adds the following: ''relating to the salaries, fees and expenses of officers in counties of the fourth class''. In *Estate of Elliott, supra,* the court said: ''The addition of further descriptive words cannot vitiate this sufficient title, unless such further words indicate a subject not really related to the matters covered by the body of the bill.''

Section 4233 of the Political Code, as adopted in 1907 (Stats. 1907, p. 354), is a part of an act entitled as follows: ''An act to repeal Title II of Part IV of the Political Code, and to add a new Title II of Part IV of said code in place thereof, relating to the establishment of a uniform system of county and township governments.'' As a part of an act thus properly entitled, section 4233 was legally adopted. Aside from the general title of the act of which section 4233 was a part, this particular section was given in that act certain subtitles referring to salaries and fees of officers in counties of the fourth class. While these subtitles referred to salaries and fees, this was a matter apart from and in addition to the general title of the act of which the section was a part, the subtitles apparently being added for convenience. And section 4233, as then adopted, like many other sections of the same act applying to counties of other classes, contained many things besides the matters of fixing salaries and fees. For example, it fixed the number of deputies in the various county offices and also, among other things, fixed the number of justices of the peace in different sized townships in counties of the fourth class.

Not only do we think the general rules laid down by the authorities above quoted require a holding that the title to the amendment here in question is sufficient but the very definite reference in the title of the amendatory act to the precise section to be amended leads inevitably to the same conclusion. The title to the 1931 amendment not only refers to the specific section of the Political Code but goes on to refer to the subtitle which was used in the original act as an additional title for that particular section. The further descriptive words "relating to the salaries, fees and expenses", etc., not only relate to the matter in that portion of the body of the bill but they are particularly germane and applicable to the section to be amended since they refer, in almost identical language, to the subtitle used in that section as originally adopted and as placed in the code. It is difficult to see how a code section could be more completely referred to and described than by referring to it by its designated code section number, and by adding the subtitle given to it in that code. Anyone interested was thus definitely told exactly what code section was sought to be amended, and a reading of that section and of the act of which it was a part, with the title thereof, would plainly disclose that this particular section plainly covered other matters besides "fees and expenses", in the strict sense of those words. We think these further descriptive words do not indicate a subject not really related to the matters covered by the body of the bill and, further, that they do very definitely indicate and refer to the exact contents of the section which was being amended. It follows that the first point raised is without merit.

The only other point requiring consideration is that the evidence is insufficient to sustain the verdict of the jury. It is argued that the evidence fails to show that the killing was wilful, deliberate and premeditated and that it must be held, as a matter of law, that the evidence establishes merely the crime of manslaughter. In support of this contention the appellant relies upon the testimony of two witnesses, Miguel Gomez and Alexander DeLarosas, who testified that immediately after they left the pool hall Contreras struck the appellant on the back of the neck and on the shoulders; that he pushed the appellant backwards for some forty feet; that the appellant continued to retreat and Contreras con-

tinued to try to hit him with his fist; that suddenly Contreras stopped; that when the witnesses came up the appellant, who was standing 8 or 10 feet away with a knife in his hand, said to them, "If you fellows want anything too, I have got enough for you here"; that they observed that Contreras was bleeding and caught him to keep him from falling; and that the defendant immediately left the scene.

An officer testified that he was standing about 275 feet away and saw these men come out from the pool hall. He testified "I saw them come out and push one another and kind of spar around, and then they would quit and talk and walk together, and finally I saw one of the taller ones strike at the other taller one, I saw his body droop and saw the other two catch hold of him." He further testified that while he saw some pushing and scuffling around he did not see any blows struck prior to the one which killed the deceased; that the man who struck the deceased ran up the street; that he immediately went to the spot where the striking occurred; and that at that time Gomez and DeLarosas told him that they found Contreras wounded there when they came out of the pool hall. When the appellant was found at his home he told the officers that he had been in bed since 9 o'clock, that he had not been in the pool hall that night, and that he had not been in a fight with anyone.

In a dying statement, which was admitted in evidence, the deceased fully described his assailant, although he did not know his name, and stated that this man quarreled with him in the pool room over who would pay for some drinks; that shortly after they came out of the pool room this man came up to him and said "You fellows from the Santa Margarita Ranch feel you are too good to drink with other people, so you take that"; and that after saying this he stabbed him.

The evidence relied upon by the appellant creates a conflict, at best, and the jury may well have refused to accept it as true. It cannot be said, as a matter of law, that the entire evidence establishes the crime of manslaughter only. The question presented was one of fact for the jury and the evidence is sufficient to sustain its finding. (*People* v. *Peete,* 54 Cal. App. 333 [202 Pac. 51].)

For the reasons given the judgment and order appealed from are affirmed.

Marks, J., and Jennings, J., concurred.