138 Cal.App.2d 518 (1956)
ORANGE COUNTY WATER DISTRICT, Respondent,
v.
F. E. FARNSWORTH et al., Appellants.
Civ. No. 5239. 
California Court of Appeals. Fourth Dist. 
Jan. 17, 1956.
 Blodget & Blodget, L. W. Blodget, Dale H. Heinly, John H. Gilbert, Jr., and Harry M. Irwin for Appellants.
 A. W. Rutan, Milford W. Dahl, Pillsbury, Madison & Sutro, Eugene M. Prince, Eugene D. Bennett and Samuel L. Wright for Respondent.
 BARNARD, P. J.
 This is an appeal from a judgment sustaining the validity of a replenishment assessment levied by the Orange County Water District in accordance with the *522 Orange County Water District Act (Stats. 1933, ch. 924), as amended by chapter 770 of the Statutes of 1953. The original act provided for seven directors of the district and provided three methods of raising funds, (1) a general assessment on an ad valorem basis, (2) a special assessment if authorized by a special election, and (3) the issuance of bonds. The 1953 amendment brought into the district the cities of Santa Ana, Anaheim and Fullerton; added three new directors, one to be appointed by each of these cities; reduced the ad valorem general assessment from a maximum of 15 cents to 8 cents per $100 valuation; eliminated the former provisions for special assessments and bond issues, to be approved by the voters; and provided for the replenishment assessment here in question.
 On June 9, 1954, the board of directors adopted a resolution levying a replenishment assessment as contemplated by the 1953 amendment, and fixing the rate thereof. The district then brought this action, pursuant to section 44 of the act, to determine the validity of this assessment. These appellants answered the petition contending that chapter 770 of the Statutes of 1953 is unconstitutional, null and void for a number of reasons and that this purported assessment is invalid. After a trial, the court found in all respects in favor of the district finding, among other things, that the charge or assessment was to be used for the purchase of water from the Metropolitan Water District for the purpose of replenishing the underground water supplies of said district; that in all of the steps and procedures leading up to the levy of this replenishment charge or assessment the board of directors of the district. its officers and agents, had fully complied with the provisions of the act; and that these provisions of the Orange County Water District Act are valid. Judgment was entered decreeing that this replenishment assessment is valid, and this appeal followed.
 [1] The appellants first contend that the district failed to establish that the water purchased would replenish the underground strata of the district, since it is proposed to dump the purchased water into the Santa Ana River 22 miles upstream from the nearest boundary of the district, the place where the water will be available; that the extent of evaporation cannot be known; and that the board of directors of the district has never determined that the project is feasible. A part of the resolution adopted on June 9 reads:
 "Now, Therefore, Be It Resolved that this Board of Directors finds and determines that it is feasible, of general *523 benefit to the lands in the District, necessary, and desirable to levy a replenishment assessment and to fix the rate thereof for the purchase of water to replenish the ground water supplies of said District for the ensuing water year." (Emphasis added by appellants.)
 It is argued that this is merely a determination that it is feasible to levy a replenishment assessment, but that it fails to find or determine that the water placed in the river will be of general benefit to the lands of the district or will replenish the underground water within the district. The language used is not subject to this narrow interpretation, and the resolution sufficiently finds and determines the matter of feasibility as required by the act. The oral and documentary evidence introduced, including the reports of the engineers, sufficiently support the court's findings in this regard.
 [2] It is next contended that the "purposes" of the district as originally organized were completely changed by the 1953 amendments of the act. It is argued that the original purpose was to provide for the acquisition and operation of water facilities through the issuance of bonds, or the levying of a special ad valorem tax, either of which methods must be first authorized by the voters of the district in an election called for that purpose; and that "the revision of 1953" repealed these provisions and substituted a so-called "charge or assessment" to be levied personally against the assessees of the lands upon which water wells were located. The purposes for which the district was formed were not changed by the 1953 amendments to the act, which merely affected the means and methods by which the purposes of the district were to be accomplished. The original expressed purposes of the district, covering the protection, conservation and replenishment of the water resources of the district, including the underground water supply, were not altered by the 1953 amendments.
 [3] It is next contended that chapter 770 of the Statutes of 1953 is invalid in that it violates the provision of section 24 of article IV of the state Constitution requiring the reenactment or republication of any act or section which is amended. It is argued that while the original Act of 1933 contained 83 sections, only 28 of these were left unchanged by the 1953 Act; that the unchanged sections were not reenacted or republished; that this constitutional provision was thus violated; that this appears from the holding in the case *524 of McFadden v. Jordan, 32 Cal.2d 330 [196 P.2d 787]; that while the McFadden case related to article XVIII of the Constitution the same reasoning would apply to section 24 of article IV, and the McFadden case in effect overruled the case of People v. Western Fruit Growers, 22 Cal.2d 494 [140 P.2d 13]; and that since the 1953 Act was a complete revision of the 1933 Act it is unconstitutional and void. The McFadden case involved the matter of revising or amending the Constitution itself, and it did not have the effect of overruling People v. Western Fruit Growers. The reasoning of the latter case is applicable here, and it cannot be held that the 1953 amendments are invalid because the whole statute was not reenacted.
 [4a] It is next contended that the 1953 Act created a new district which superseded the one created by the 1933 Act, and that this new district has never been organized. It is argued that this result follows because the 1953 Act repealed section 1 of the 1933 Act and added a new section 1 stating that "A district is hereby created to be known and designated as 'Orange County Water District,' " and describing the boundaries thereof; that the district which was formerly created was thereby dissolved; that a new district was thereby created with different boundaries, a different board of directors, and different purposes; that there has been no pretense of organizing this new district and no election for its first directors has been held, the provision for that purpose in the 1933 Act having been repealed; that the owners of property within the territory which was added to the new district could not be represented by a board consisting of seven members elected by the old district and three members appointed by the cities; and that even if it can be said that the old district continues in existence a new district was also created which is not a functioning corporation.
 Section 1 of the 1933 Act provided for seven divisions of the district. Section 1 of the 1953 Act added certain territory and placed it in three new divisions, and section 12 provided for the appointment of a director for each of these new divisions. While section 1 of the old act was repealed, section 1 of the new act used the same language except for stating a different territorial description. [5] Where a statute is repealed and some of it is at the same time reenacted, the reenacted provisions of the repealed act continue in force without interruption. (Estate of Martin, 153 Cal. 225 [94 P. 1053]; Gastineau v. Meyer, 131 Cal.App. 611 [22 P.2d 31]; Estate of Childs, 18 Cal.2d 237 [115 P.2d 432, 136 *525 A.L.R. 333]; Perkins Mfg. Co. v. Clinton Const. Co., 211 Cal. 228 [295 P. 1, 75 A.L.R. 439].) [4b] It clearly appears that the Legislature, in amending the act in 1953, did not intend to dissolve or disincorporate the existing district, or to provide for a new district which should supersede the old one. It would be absurd for the Legislature to abolish a district and by the same act amend in detail the provisions for its continued administration. [6] An absurdity may not be ascribed to an act of the Legislature if a reasonable interpretation of the statute is possible. (Warner v. Kenny, 27 Cal.2d 627 [165 P.2d 889]; In re Mitchell, 120 Cal. 384 [52 P. 799].) [7] Where there is any doubt of the legislative intent the courts may consider the title of the act in question. (Ex parte Kohler, 74 Cal. 38 [15 P. 436].) [4c] The title of the 1953 Act is not consistent with the supposed intention to abolish one district and create another. Had the Legislature intended to create a new district and to require a new election and organization of its directors, it would have so provided in the act. No such provision was made and the only further organization or reorganization provided for was the appointment of directors for the three new subdivisions which were added to the district. The appointment of such additional directors was established at the trial. The intention of the Legislature is further indicated by the fact that section 8 of the 1933 Act, which provided for a first election of directors, was entirely omitted; and sections 10 and 12 were amended to provide for the future election of directors in the original seven districts, and for the appointment of directors in the three city divisions which were added. Moreover, any possible doubt in this respect is removed by the provisions of the first validating Act of 1954. (1954 Ex.Sess., ch. 17.)
 It is next contended that chapter 770, as adopted in 1953, is unconstitutional and void in that it violates the provision in section 24 of article IV of the Constitution which provides that every act shall embrace but one subject, which subject shall be expressed in its title. It is contended that while the title of chapter 770 states that it is an act "relating to the Orange County Water District" this water district is not the subject of the legislation but is only the area upon which the legislation is to operate; that the 1933 Act provided for elections authorizing the issuance of bonds and the levying of certain assessments, while the 1953 Act substitutes a provision for replenishment assessments, without *526 requiring any election; that this is a new provision which must be referred to in the title, citing Ikuta v. Ikuta, 97 Cal.App.2d 787 [218 P.2d 854]; that deceptive legislation adroitly introduced and hidden in the body of the act is forbidden, citing Matter of Bonds of the South San Joaquin Irr. Dist., 161 Cal. 345 [119 P. 198]; that the Legislature cannot legislate upon a subject not embraced in the title of the original act under pretense of amending a particular section of that act, citing People v. Parvin, 74 Cal. 549 [16 P. 490]; that where the title expresses no subject whatever the legislation is void, citing Lewis v. Dunne, 134 Cal. 291 [66 P. 478, 86 Am.St.Rep. 257, 55 L.R.A. 833]; and that the subject of the legislation in chapter 770 is in part the levying and collection of a charge or water replenishment assessment, and this subject is nowhere mentioned in the title of the 1953 Act.
 [8-11] It is well established that the purpose of this constitutional provision is not to destroy legislation germane to the general object declared in the title but to protect against the passage of provisions foreign to the title, subject and purposes of an act; that this provision must be liberally construed to uphold legislation whose parts are reasonably germane; that the title is sufficient if the provisions of the act are germane to the subject matter expressed in the title and if the title naturally suggests to the mind the field of legislation which is included in the text of the act; and that it was never intended that the title of an act should be an index to all of its provisions. (Matter of Bonds of the South San Joaquin Irr. Dist., 161 Cal. 345 [119 P. 198]; Heron v. Riley, 209 Cal. 507 [289 P. 160]; Powers Farms, Inc. v. Consolidated Irr. Dist., 19 Cal.2d 123 [119 P.2d 717]; County of Ventura v. Southern Calif. Edison Co., 85 Cal.App.2d 529 [193 P.2d 512].) [12] It has also been held that reference in the title of an amendatory act to the title of the statute amended is sufficient if the subject matter of the amendatory act falls within the subject expressed in the title of the original statute. (People v. Parvin, 74 Cal. 549 [16 P. 490]; Estate of Elliott, 165 Cal. 339 [132 P. 439]; People v. Flores, 1 Cal.App.2d 58 [36 P.2d 239].) [13] The title of the 1953 Act reads in part: "An Act to amend (certain sections of) to add (certain sections to) and to repeal (certain sections of) the Orange County Water District (Stats. 1933, ch. 924), relating to the Orange County Water District." This is a sufficient title under the authorities and gives sufficient notice of the field of legislation subject *527 and purposes, all of which were expressed, so far as material here, in the title of the original 1933 Act. The title of the 1953 Act is in the identical form used by the Legislature many times in recent years in amending acts relating to specially created districts, and is similar to the title which appears in many other amending acts passed in recent years relating to such special districts. Under established rules, it must be held that the title to the 1953 Act sufficiently complies with this provision of the Constitution.
 [14] It is next contended that the 1953 Act is a local and special act (1) creating crimes and misdemeanors, (2) regulating the practice in courts of justice, and (3) providing for a special system of tax collections in violation of section 25 of article IV of the Constitution. It is argued that the act creates new crimes, regulates courts of justice by providing different rules for the issuance of injunctions and attachments, and provides for special methods of collection of taxes by making them a personal liability of the taxpayer.
 The provisions of the 1953 Act making certain acts misdemeanors and providing certain penalties therefor are for the purpose of enforcing the provisions for acquiring the funds to carry out the purposes of the district, and relate to the particular class of persons coming within the provisions of the act. Similar provisions are found in many of the acts found in the Public Resources Code. The provisions in the act relating to injunctions, attachments and appeals relate to a particular class of persons only and are sustainable where the classification is based upon reasonable grounds. (Rainey v. Michel, 6 Cal.2d 259 [57 P.2d 932, 105 A.L.R. 148]; County of San Bernardino v. Way, 18 Cal.2d 647 [117 P.2d 354]; Cohen v. City of Alameda, 168 Cal. 265 [142 P. 885]; In re Sutter-Butte By-Pass Assess. No. 6, 191 Cal. 650 [218 P. 27].) A logical and reasonable classification here appears. The special method for the collection of taxes was justified by the special district created and existing, being based upon a natural and reasonable classification. A further consideration is that all of these matters are not involved on this appeal, which is concerned with the validity of this assessment and not with some of the steps which may in the future be taken to collect the same. Under any view, these matters would come within the separability provision contained in section 65 of the act.
 [15] It is next contended that the 1953 Act is uncertain and ambiguous in that it cannot be determined from the *528 language of the act when the assessment is to be levied; upon what it is to be levied; upon whom it is to be levied; when it becomes due, or when it becomes delinquent. We find no such uncertainty or ambiguity in the act. A reading of the act sufficiently discloses that the assessment is to be levied on the second Wednesday in June of each year; that it is to be levied on the act of producing underground water; that it is to be levied upon the operator of the water producing facility; that it becomes due on or before January 31 and July 31 in each year; and that it becomes delinquent immediately following January 31 and July 31 of each year if not paid by those dates.
 [16] It is next contended that the act is discriminatory as between property owners within the same class. It is argued that the purpose of the act is to increase the supply of water from the Santa Ana River, both on the surface and underground, for the benefit of water users within the district; that the water in the underground strata within the district is supplied by the water flowing down the Santa Ana River; that this is one body of water which would become underground water if allowed to percolate into the soil of the district; that since all of the water comes out of the Santa Ana River there can be no reasonable or logical distinction between those who use surface water of the river, transported through canals to lands within the district, and those using part of the same water which is diverted from the underground strata through the use of wells and used upon other lands within the district; that the water all comes from the same source and belongs equally to all of the riparian owners as a part of their realty; that there is no logical difference between the surface waters and the subterranean waters; that the underground waters are a part and parcel of the realty of the landowners pumping and using such waters; and that it follows that the act unlawfully discriminates between such landowners and other landowners in the district who receive their water from canals and irrigation ditches.
 We are unable to agree with the contention that the 1953 amendments unlawfully discriminate between those receiving water taken from the Santa Ana River at a point outside the district and brought into the district through canals and those producing ground water through use of wells located in the district. The 1953 Act was passed to enable the district to meet a vital and pressing need which affected, directly or indirectly, all persons living in the district. That there *529 was a progressive and increasing shortage of ground water in the district which was resulting in an ever increasing intrusion of sea water into the underground basin was well known. This affected all landowners within the district, including those in the cities which were added to the district and required to bear a portion of the expenses of the district. The landowners within the cities are required to pay the general ad valorem assessment. They, and others living in the cities and paying for water, would also share in paying the replenishment assessment resulting from any water which may be pumped from within the district by the facilities furnishing water to persons living in those cities. The persons receiving water from the water and irrigation companies, which water is taken from the Santa Ana River outside the district and brought into the district through canals and ditches, would also pay the ad valorem tax. Those water and irrigation companies also have adjudicated rights to the surface flow of the river which they take, and none of that surface water so taken includes any of the replenishment water which is to be purchased and used to replenish underground waters of the lands within the district. Moreover, the water thus brought into the district by the water and irrigation companies will naturally make a substantial contribution to the underground waters of the district through seepage and percolation. The water and irrigation companies serving lands within the district also pump water from wells within the district, and with respect to the water so pumped would also be subject to the special replenishment assessment in question. [17] Not only is the matter of discrimination more theoretical than practical, but if any discrimination exists it cannot be held to be unconstitutional or unlawful if it results from and is based upon a proper difference in classification. In our opinion, there is an actual, natural and logical basis for the classification here made which justifies the distinction made by the 1953 Act in applying the special replenishment assessment to those pumping water within the district and treating the other class of water users in a different manner.
 Appellants raise several other points which may be treated together. It is argued that the water which underlies real property is a part of the property itself and that the charge in question is, in effect, a tax levied by reason of ownership of the property; that the act constitutes double taxation on the ownership and use of property which is illegal and *530 void, citing Flynn v. City & County of San Francisco, 18 Cal.2d 210 [115 P.2d 3]; that a tax cannot be levied on a farmer's right to use his own property; that if this is considered an assessment for the benefit of the lands in the district it cannot be made a personal charge against the owner of such lands; and that the act is unconstitutional and void whether considered as a tax or as an assessment for the benefit of the lands.
 [18] The charge in question is not a tax levied by reason of the ownership of property, nor does it constitute double taxation for that reason. It is not a special assessment based on or solely for the benefit of particular lands and does not come within the principles applied in Taylor v. Palmer, 31 Cal. 240, and Spring Street Co. v. City of Los Angeles, 170 Cal. 24 [148 P. 217, L.R.A. 1918E 197], where it was held that an assessment upon real estate within a given district and for the benefit of such real estate, could not be made a personal charge against the owner of the land. The charge in question is more in the nature of an excise tax levied upon the activity of producing ground water by pumping operations. Excise taxes on an activity have been frequently upheld. (McAdams Oil Co. v. City of Los Angeles, 32 Cal.App.2d 359 [89 P.2d 729]; Ainsworth v. Bryant, 34 Cal.2d 465 [211 P.2d 564]; Ex parte Mirande, 73 Cal. 365 [14 P. 888].) While the facts of this case may not precisely fit the various decisions and principles held applicable in cases relating to taxes on property and the ownership thereof, to excises on activities or business enterprises, or to special assessments for the benefit of particular lands, it does not necessarily follow that the charge here in question is unconstitutional and void. [19] As was said in County of Ventura v. Southern Calif. Edison Co., 85 Cal.App.2d 529 [193 P.2d 512], "A holding that legislation is constitutionally invalid, however, cannot be founded upon a mere difficulty of categorization, but rather must be based upon a clear, substantial, and irreconcilable conflict with the fundamental law." Under somewhat different circumstances a personal charge was upheld in the case of Willard v. Glenn-Colusa Irr. Dist., 201 Cal. 726 [258 P. 959]. [20] We know of no established rule which would require a holding that the charge in question is unlawful merely because it does not come squarely within the requirements laid down for certain other charges, imposed under other circumstances and conditions. While the situation here is somewhat new, insofar as legal precedents are concerned, it is *531 one presenting problems which are presently of great importance to the district in question, and which in all probability will increasingly continue to present such problems. Under the circumstances, such a charge or assessment should not be held unconstitutional and void where it cannot be held to be in clear and substantial conflict with the fundamental law.
 The judgment is affirmed.
 Griffin, J., and Mussell, J., concurred.