[No. S117590. Dec. 22, 2005.]

BARRATT AMERICAN, INCORPORATED, Plaintiff and Appellant, v. CITY OF RANCHO CUCAMONGA, Defendant and Respondent.

## COUNSEL

Law Offices of Walter P. McNeill, Walter P. McNeill; Law Offices of Richard D. Gann and Richard D. Gann for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton and David P. Lanferman for California Building Industry Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Jonathan M. Coupal and Timothy A. Bittle for Howard Jarvis Taxpayers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Office of Brent & Klein and Jason G. Brent for George C. Jenkins as Amicus Curiae on behalf of Plaintiff and Appellant.

James S. Burling and Meriem L. Hubbard for Pacific Legal Foundation as Amicus Curiae on behalf of Plaintiff and Appellant.

Richards, Watson & Gershon, James L. Markman, B. Tilden Kim and Juliet E. Cox for Defendant and Respondent.

Best, Best & Krieger, Jeffrey V. Dunn and Mark D. Servino for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**CHIN, J.**—The Mitigation Fee Act (Gov. Code, §§ 66000–66025)[1] (the Act) was passed by the Legislature " 'in response to concerns among developers that local agencies were imposing development fees for purposes unrelated to development projects.' " (*Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 864 [50 Cal.Rptr.2d 242, 911 P.2d 429].) Although most of the Act is concerned with development fees, it also addresses fees or charges that do not necessarily relate to a development project. (*Utility Cost Management v. Indian Wells Valley Water Dist.* (2001) 26 Cal.4th 1185, 1191 [114 Cal.Rptr.2d 459, 36 P.3d 2] (*Utility Cost Management*).) The various sections of the Act cover fees for development projects (§§ 66000–66011), water or sewer connections (§ 66013), and zoning and building permits (§ 66014). This case involves legal challenges to building inspection and permit fees and appropriate remedies when excessive fees are imposed.

Section 66014, subdivision (a), provides that local agency fees for *building inspections and permits* may not exceed the estimated reasonable cost of providing the service for which the fee is charged unless the excess amounts are submitted to and approved by a two-thirds vote of the electorate. Section 66016, subdivision (a), provides a *prospective fee reduction remedy* when fees or service charges exceed actual costs and create excess revenues. Both sections specify that any judicial challenge to a fee thereunder is subject to the requirements of section 66022, which states that the action or proceeding "shall be commenced within 120 days of the effective date of the ordinance, resolution, or motion." (§ 66022, subd. (a); see also §§ 66014, subd. (c), 66016, subd. (e).)

Sections 66020 and 66021, which authorize a *refund* of any unlawful part of the fees imposed on a *development project*, are subject to a different statute of limitations period. Local agencies must give project applicants written notice of the fee amount, indicating that they have 90 days to protest it. (§ 66020, subd. (d)(1).) Any party who files a protest may then file an action attacking the imposition of the fees within 180 days after delivery of the local agency's notice. (§ 66020, subd. (d)(2).)

■ In this case, we determine: (1) whether a party who challenges a local agency's fees for building inspections and permits under section 66014 can state a claim for remedies under both section 66016 (prospective fee reduction) and section 66020 (refund); (2) whether the limitations period of section 66020 or section 66022 applies to a claim that the local agency's building permit fees are excessive; and (3) whether a local agency's reenactment of the same building permit and inspection fees is subject to challenge under

---

[1] Except as otherwise noted, all further statutory references are to the Government Code.

section 66022. In addition, we decide other issues: (4) whether local agencies that charge excessive building permit and plan review fees are subject to a penalty for collecting and retaining "special taxes" without voter approval within the meaning of section 53728; and (5) whether local agencies are constitutionally required to conduct annual financial audits to assess whether their fees create excess revenues. We conclude that building permit fees are not fees imposed on a development project. Therefore, the applicable remedy and limitations period for excessive building fees claims under section 66014 are found in sections 66016 and 66022, not in sections 66020 and 66021. Also, we conclude that a reenactment of the same building permit fee is a modification or amendment of an existing fee or service charge under section 66022, which triggers a new limitations period; that local agencies that charge excessive building permit fees are not subject to a section 53728 penalty; and that local agencies are not constitutionally required to conduct annual financial audits.

## I. Factual and Procedural History

Because this case comes to us on a demurrer for failure to state a cause of action, we accept as true the facts alleged in plaintiff Barratt American, Incorporated's (Barratt) complaint. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

In July 1999, the City of Rancho Cucamonga (City) adopted resolution No. 99-146, setting forth a comprehensive fee schedule for various services the City provides. It included a fee schedule for building permits and plan reviews based on the "total valuation of work." The charges for building permit fees started at $25 for work valued up to $1,000 and ended at $555 for work valued up to $100,000. Each additional $1,000 in value incurred a fee of $2.50. Plan review fees were a percentage of the building permit fees. The City building official was authorized to determine the "total valuation of work." In December 2000, the City adopted resolution No. 00-268, which modified certain fees set in 1999. The 2000 resolution slightly increased, by 50 cents, the building permit fee from $555 for work valued at $100,000 to $555.50. The resolution explained that the new fee was a correction of a previous typographical error. In January 2002, the City adopted resolution No. 02-023, which modified certain fees set in 2000. However, the building permit fee was not changed, except to the extent it was reset at $555 for work valued at $100,000. The 2002 ordinance apparently reintroduced the typographical error that the 2000 ordinance had corrected.

In June 2000, Barratt, a real estate developer, began to construct a 123-unit residential subdivision in the City. In May 2002, Barratt sued the City, alleging that the City's building permit and plan review fees were excessive,

that the City's method of establishing those fees was arbitrary and unrelated to the actual cost of the service provided, that the fees were based improperly on the monetary value of the work, and that the building officials had unfettered authority to determine the final valuation component of the fee. The complaint further alleged that, beginning in June 2000, Barratt had paid more than $143,000 in building permit and plan review fees for at least 83 building permits for the construction of single-family homes in the 123-unit subdivision, that it intended to continue construction until it completed the project, and that the City collectively received more than $1 million per year (and more than $3 million total) in excess building permit and plan review fees. Barratt sought: (1) a refund of $143,000 for the allegedly excessive fees already paid (§ 66020) or in the alternative, a refund in excess of $110,000, after crediting the City with the reasonable value of services it rendered in issuing the building permits and reviewing Barratt's plans; (2) a writ of mandate compelling the City to apply the excess fee revenues to reduce future fees (§ 66016, subd. (a)) and to perform an annual audit to identify excess fee revenues (Cal. Const., art. XIII B, §§ 1.5, 8, subd. (b)); (3) a declaration that the fees imposed were invalid "special taxes," resulting in the reduction or forfeiture of property tax revenues (§§ 53722, 53728); and (4) the invalidation of resolution No. 02-023 (§§ 66016, subd. (e), 66022, subd. (b)). When it filed the action, Barratt was midway through the development and sales of the homes in the subdivision.

The City demurred to Barrett's complaint. The trial court sustained its demurrer without leave to amend, ruling that: (1) Barratt could not obtain a refund under section 66020 because building permit and plan review fees are not development fees within the meaning of that section; (2) a writ of mandamus to compel the City to comply with section 66016 and to perform an annual audit and fee adjustment was an inappropriate remedy because the timing of any fee review and adjustment is a matter of legislative discretion; and (3) declaratory relief under sections 53722 and 53728 was not an appropriate remedy. Instead, the court found that the appropriate remedy for excessively high building permit fees was to challenge the ordinance in a validation action and obtain a prospective fee reduction, as specified in section 66016. That remedy was unavailable to Barratt, however, because the statute of limitations period had expired. In addition, the court determined that Barratt could not attack the validity of resolution No. 02-023 because the 2002 resolution only reenacted the fee previously set forth in the 2000 resolution and was not a new or increased fee under section 66016.

The Court of Appeal agreed with the trial court's reasoning and result and affirmed the judgment. We granted Barratt's petition for review.

## II. Discussion

Barratt contends that payers of excess building permit fees in violation of sections 66014 and 66016 have *several* remedies for those overcharges: (1) individual refunds (§§ 66020, 66021, subd. (a)); (2) application of excess fees to future costs (§ 66016, subd. (a)); and forfeiture of property tax revenues (§ 53728). Barratt also claims that to ensure that cities comply with sections 66014, subdivision (a), and 66016, subdivision (a), they must conduct annual audits. (Cal. Const., art. XIII B.) We discuss those claims below.

*Sections 66014, 66016, and 66022.*

■ Section 66014, subdivision (a), permits local agencies to impose building inspection and permit fees "not [to] exceed the estimated reasonable cost of providing the service for which the fee is charged, unless a question regarding the amount of the fee charged in excess of the estimated reasonable cost of providing the services or materials is submitted to, and approved by, a popular vote of two-thirds of those electors voting on the issue."

Section 66016, subdivision (a), which also expressly applies to building inspection and permit fees, provides the remedy for over-collections: "Unless there has been voter approval, as prescribed by Section 66013 or 66014, no local agency shall levy a new fee or service charge or increase an existing fee or service charge to an amount which exceeds the estimated amount required to provide the service for which the fee or service charge is levied. If, however, the fees or service charges create revenues in excess of actual cost, those revenues shall be used to reduce the fee or service charge creating the excess."

■ Both sections 66014 and 66016 require that "[a]ny judicial action or proceeding to attack, review, set aside, void, or annul the ordinance, resolution, or motion" authorizing the charge of a fee subject to those sections "shall be brought pursuant to Section 66022." (§§ 66014, subd. (c), 66016, subd. (e).)

Section 66022, subdivision (a), provides: "Any judicial action or proceeding to attack, review, set aside, void, or annul an ordinance, resolution, or motion adopting a new fee or service charge, or modifying or amending an existing fee or service charge, adopted by a local agency, as defined in Section 66000, shall be commenced within 120 days of the effective date of the ordinance, resolution, or motion." Subdivision (c) of that same section states: "This section shall apply only to fees, capacity charges, and service charges described in and subject to Sections 66013 and 66014."

### 1. *Individual Refund Remedy and Limitations Period Under Sections 66020 and 66021 Do Not Apply to the Building Permit Fees Barratt Paid.*

Although Barratt agrees that the charges at issue are fees for "building inspections" and "building permits" that are subject to sections 66014 and 66016, it argues that it does not seek "to attack, review, set aside, void, or annul" the ordinances under section 66022. Instead, it claims that it is protesting the imposition of specific fees on a particular development project, which is governed by the separate protest and refund procedures and remedy and limitations scheme set forth in sections 66020 and 66021.

Section 66020 provides that "Any party may protest the imposition of any *fees*, dedications, reservations, or other exactions *imposed on a development project, as defined in Section 66000*, by a local agency" by paying the fees and serving a written notice of protest. (§ 66020, subd. (a), italics added.) A local agency must provide a development project applicant written notice of the amount of the fees when imposing them and must indicate that the applicant has 90 days to protest the fees. (§ 66020, subd. (d)(1).) "Any party who files a protest pursuant to subdivision (a) may file an action to attack, review, set aside, void, or annul the imposition of the fees, dedications, reservations, or other exactions imposed on a development project by a local agency within 180 days after the delivery of the notice." (§ 66020, subd. (d)(2).)

Section 66021 provides that "Any party on whom a *fee*, tax, assessment, dedication, reservation, or other exaction has been imposed, the payment or performance of which is *required to obtain governmental approval of a development, as defined by Section 65927, or development project*, may protest the establishment or imposition of the fee, tax, assessment, dedication, reservation, or other exaction as provided in Section 66020." (§ 66021, subd. (a), italics added.)

Barratt argues that it complied with the statutory procedural requirements of sections 66020 and 66021 by paying the fees and submitting a letter of protest to the City, dated September 21, 2001. The City responds that those sections do not create a refund remedy for "excess" regulatory fees, such as building permit and plan review fees, because they are not fees imposed on a development project within the meaning of sections 66020 and 66021. Thus, those sections do not apply here. We agree that Barratt's refund claim fails because sections 66020 and 66021 do not apply to the building permit fees it paid.

■ "[F]ees . . . imposed on a development project," as used in section 66020, refers to "fees" and a "development project" as defined in section 66000. A "development project" is defined as "any project undertaken for the purpose of development . . . includ[ing] a project involving the issuance of a permit for construction or reconstruction, but not a permit to operate." (§ 66000, subd. (a).) A "fee" is defined as "a monetary exaction other than a tax or special assessment . . . that is charged by a local agency to the applicant *in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project, but does not include . . . fees for processing applications for governmental regulatory actions or approvals . . . .*" (§ 66000, subd. (b), italics added.) Thus, section 66020, by its own terms, applies only to "development fees" that alleviate the effects of development on the community and does *not* include fees for specific regulations or services.

On the other hand, section 66016 applies to a long list of local regulatory fees described in sections 51287, 56383, 57004, 65104, 65456, 65863.7, 65909.5, and 66451.2; to building, planning, and zoning fees described in section 66014; to public facility capacity and connection charges described in section 66013; and to building permit fees described in Health and Safety Code sections 17951, 19132.3, and 19852.[2]

Here, Barratt paid building permit and plan review fees to cover the costs of regulating construction quality and ensuring public safety. (See Health & Saf. Code, §§ 17951, subds. (c) and (e), 19132.3.) Although sections 66014 and 66016 govern these regulatory fees, they do not qualify as "development project" fees under section 66000. In addition, the building permit and plan review fees were not made "in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project . . . ." (§ 66000, subd. (b).) They were not "fees imposed on development projects in order to finance public improvements or programs that bear a 'reasonable relationship' to the development at issue." (*Utility Cost Management, supra,* 26 Cal.4th at p. 1191.) Instead, the building permit and plan review fees were simply fees to defray the administrative and enforcement costs of a local regulatory program. (See §§ 66014, subd. (a), 66016, subd. (a); Health & Saf. Code, §§ 17951, subd. (c), 19132.3 [fees may not exceed the reasonable cost of providing the regulatory service for which the fee is charged].)

---

[2] Section 66016, subdivision (d), states that: "This section shall apply only to fees and charges as described in Sections 51287, 56383, 57004, 65104, 65456, 65863.7, 65909.5, 66013, 66014, and 66451.2 of this code, Sections 17951, 19132.3, and 19852 of the Health and Safety Code, Section 41901 of the Public Resources Code, and Section 21671.5 of the Public Utilities Code."

■ Although the plain language of the statutes dictates the result here (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]), legislative history provides additional authority. The California Legislative Counsel has similarly concluded that section 66020 does not include fees associated with plan check or inspection fees. (Ops. Cal. Legis. Counsel, No. 1518 (Jan. 28, 1997) Development Fees, pp. 1, 6.) The Legislative Counsel reasoned that building permit fees are "separately authorized under the Health and Safety Code and do not relate to fees in the nature of monetary exactions imposed for the purpose of defraying all or a portion of the cost of public facilities related to a development project as contemplated in the Mitigation Fee Act." (*Id.* at p. 6.) Legislative Counsel opinions have great persuasive weight, "since they are prepared to assist the Legislature in its consideration of pending legislation." (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2].) Accordingly, we conclude that the Legislature did not intend section 66020 to authorize a refund action for overcharges of building permit and plan review fees.

Barratt claims that section 66021 expands the scope of section 66020's protest procedures to cover building permit fees. He argues that a fee paid to obtain approval of a building permit for construction of residential housing qualifies as a fee "the payment or performance of which is required to obtain governmental approval of a development, as defined by Section 65927." (§ 66021, subd. (a).) Section 65927 defines "development" broadly to include "the placement or erection of any solid material or structure."

■ However, section 66021 operates not to extend section 66020's protest procedures to regulatory fees, but to extend them to taxes and assessments. (Compare § 66020, subd. (a), italics added ["Any party may protest the imposition of any *fees, dedications, reservations, or other exactions* . . . ."] with § 66021, subd. (a) ["Any party on whom a *fee, tax, assessment, dedication, reservation, or other exaction* has been imposed . . . ."]; see also § 66000, subd. (b) [excluding taxes and assessments from the Act's definition of "fee"].) In addition, section 66021 limits its scope to those fees or taxes that are "required to obtain governmental approval of a development, as defined by Section 65927." (§ 66021, subd. (a).)

As the City notes, many cities require applicants to pay certain mitigation fees as a precondition to the issuance of a building permit. This building permit process might reasonably be characterized as being "required to obtain governmental approval of a development" (§ 66021, subd. (a)). (See, e.g., *Trend Homes, Inc. v. Central Unified School Dist.* (1990) 220 Cal.App.3d 102, 108 [269 Cal.Rptr. 349] [noting that the City of Fresno required certain

homebuilders to pay school impact fees before becoming eligible for building permits].) However, Barratt challenges only the City's charges for ministerial, regulatory building plan review and construction inspection activities that implement state and local building safety standards. These fees—for regulatory services the Health and Safety Code requires—do not necessarily relate to a development project (e.g., fees imposed on a homeowner's addition of a laundry room). They fund a program that supervises *how, not whether,* Barratt may build. Thus, the building permit fees in this case were *not* "required to obtain governmental approval of a development." (§ 66021, subd. (a).)

■ Analogously, it has been held that water and sewer connection fees under section 66013—fees that are also included in section 66016—"are not 'fees . . . imposed on a development project' for purposes of Section 66020" and thus, are not subject to review under the payment and protest provisions of section 66020. (*Cal. Psychiatric Transitions, Inc. v. Delhi County Water Dist.* (2003) 111 Cal.App. 4th 1156, 1161 [4 Cal.Rptr.3d 503] (*Cal. Psychiatric Transitions*).) The Court of Appeal reasoned: "As the Supreme Court pointed out in *Utility Cost Management*[, *supra,*] 26 Cal.4th [at page] 1191, the mere fact that fees are imposed in a particular instance in connection with development does not make them 'fees imposed on a development project' for purposes of section 66020. The court stated that 'development fees [are] fees imposed on development projects in order to finance public improvements or programs that bear a "reasonable relationship" to the development at issue.' (*Utility Cost Management,* at p. 1191.) The fees and charges authorized by section 66013 may or may not involve development . . . but the fees and charges are always tied directly to a benefit conferred on the property assessed (*id.* at p. 1189). Accordingly, such charges are user fees (in the case of connection fees) . . . .

"By contrast, 'fees . . . imposed on a development project,' as used in section 66020, refers to 'fees' as defined in section 66000, subdivision (b). That definition states that a fee is 'a monetary exaction *other than a tax or special assessment* . . . that is charged by a local agency to the applicant . . . for the purpose of defraying all or a portion of the cost of public facilities related to the development project . . . .' (§ 66000, subd. (b), italics added.) Thus, definitionally, a fee subject to the payment/protest procedure of section 66020 [does not] include[] . . . a connection fee (because it does not pay for public facilities, only for the private party's connection to the system)." (*Cal. Psychiatric Transitions, supra,* 111 Cal.App.4th at p. 1161.)

Similarly, in *Capistrano Beach Water Dist. v. Taj Development Corp.* (1999) 72 Cal. App.4th 524, 529–530 [85 Cal.Rptr.2d 382] (*Capistrano Water Dist.*), the Court of Appeal held that sewer connection fees (§ 66013) paid by a developer to connect its hotel to a sanitation district's sewer system were

not "fees" for a "development project" under section 66000, subdivisions (a) and (b). Thus, fees imposed under section 66013 could not be refunded. The court noted that: (1) the district did not condition the approval of the hotel project on payment of the fee or impose the fee in connection with issuing or approving a permit for development and (2) sections 66013 and 66016 do not include a refund remedy. (*Capistrano Water Dist., supra,* 72 Cal. App.4th at pp. 528–529.)

In short, a fee does not become a "development fee" simply because it is made in connection with a development project. (*Cal. Psychiatric Transitions, supra,* 111 Cal.App.4th at p. 1161; see also *Utility Cost Management, supra,* 26 Cal.4th at p. 1191.) Just as fees imposed under section 66013 cannot be refunded (*Capistrano Water Dist., supra,* 72 Cal.App.4th at pp. 527–530), fees imposed under sections 66014 and 66016 cannot be refunded under sections 66020 and 66021.

Moreover, we must construe a statute in the context of the entire statutory scheme of which it is a part, in order to achieve harmony among the parts. (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 779 [38 Cal.Rptr.2d 699, 889 P.2d 1019]; *People v. Woodhead* (1987) 43 Cal.3d 1002, 1009–1010 [239 Cal.Rptr. 656, 741 P.2d 154].) Section 66016 applies specifically to building permit fees and states the remedy for any facial overcharges: "If however, the fees or service charges create revenues in excess of actual cost, those revenues *shall be used* to reduce the fee or service charge creating the excess." (§ 66016, subd. (a), italics added.) Surplus fees that have been refunded cannot simultaneously be "paid forward" to reduce fees. In other words, permitting both retrospective refund and prospective reduction remedies would allow two different dispersions of the same funds and would create incongruous results. Because section 66016 applies specifically to building permit fees, it prevails over the more general statutes that might otherwise seem to conflict with it. (See *San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577–578 [7 Cal.Rptr.2d 245, 828 P.2d 147].) When read together, sections 66016, 66020, 66021, and 66022 do not authorize a refund remedy for excessive regulatory fees.

Barratt argues that depriving individual fee payers, such as itself, of a refund remedy is unfair because a prospective fee reduction remedy only benefits future fee payers collectively. By invoking the protest and refund procedure in section 66020, Barratt necessarily claims that such protests are timely up to 90 days after imposition of the fees. (§ 66020, subd. (d)(1).) However, such fee challenges would subject cities to suits for building permit fee refunds at any time well beyond the 120-day limitations period set forth in section 66022. This would undermine the purpose of that shortened limitations period, to give public agencies "certainty with respect to

the enforceability of their fee ordinances and resolutions." (*Utility Cost Management, supra,* 26 Cal.4th at p. 1197.) We must apply the statutory scheme as written. Barratt's concerns are more appropriately brought to the attention of the Legislature.[3]

### 2. *Penalty or Offset for Unauthorized "Special Taxes" Under Section 53728 Is an Inapplicable Remedy.*

██ Barratt sought declaratory relief under section 53728, asking the trial court to impose a penalty on the City for collecting and retaining "special taxes" without voter approval. Section 53728—a part of Proposition 62 (§§ 53720–53730)—provides that property tax revenues allocated to the local government be reduced by one dollar for each dollar of revenue attributable to an unauthorized "special tax."[4] "Special taxes"—those imposed for specific purposes (§ 53721)—must be approved by a two-thirds vote of the voters. (§ 53722.) "In general, taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted. [Citations.]" (*Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866, 874 [64 Cal.Rptr.2d 447, 937 P.2d 1350] (*Sinclair Paint Co.*).)

██ Barratt alleges that the surplus building permit and plan review fees are unauthorized "special taxes," which subject the City to a property tax allocation reduction. However, it provides no authority for the claim that excess regulatory fees constitute taxes. Simply because a fee exceeds the reasonable cost of providing the service or regulatory activity for which it is charged does not transform it into a tax. (See *Alamo Rent-A-Car, Inc. v. Board of Supervisors* (1990) 221 Cal.App.3d 198, 205–206 [272 Cal.Rptr. 19] ["reverse logic" does not compel the conclusion that an allegedly excessive fee was a tax].) ██ The specific statute—section 66016—provides the exclusive remedy for overcharges. If actual revenues exceed actual costs, the City must make a prospective fee adjustment by using that surplus, in lieu of

---

[3] Barratt argues that the lack of a refund remedy violates constitutional guarantees of due process. Because the Court of Appeal did not address the due process issue in its opinion and Barratt failed to file a petition for rehearing in that court to bring any deficiency to the court's attention, we do not address that claim. (Cal. Rules of Court, rule 28(c)(2).)

[4] Section 53728 states: "If any local government or district imposes any tax without complying with the requirements of this Article, or in excess of its authority as clarified by Section 53727, whether or not any provision of Section 53727 is held not applicable to such jurisdiction, the amount of property tax revenue allocated to the jurisdiction pursuant to Chapter 6 of part 0.5 of Division 1 of the Revenue and Taxation Code (commencing with Section 95) shall be reduced by one dollar ($1.00) for each one dollar ($1.00) of revenue attributable to such tax for each year that the tax is collected. Nothing in this section shall impair the right of any citizen or taxpayer to maintain any action to invalidate any tax imposed in violation of this Article."

a fee revenue, to cover future expenses. (§ 66016, subd. (a).) It cannot refund the excess or transfer it to the City's general fund to replace or augment tax revenue. (See Health & Saf. Code, §§ 17951, subd. (c) [local permit fees "shall not be levied for general revenue purposes"], 19132.3 [same].)

 Accordingly, the dollar-for-dollar penalty or offset allowed by section 53728 does not apply to Barratt's claims. (See *Sinclair Paint Co., supra,* 15 Cal.4th at p. 876 ["special taxes" in article XIII A, section 4, of the California Constitution do not include regulatory fees that do not exceed the reasonable cost of providing services necessary to the activity for which the fee is charged *and* that are not levied for unrelated revenue purposes].)

> 3. *Writ of Mandate to Compel an Annual Fee Revision Is Not an Available Remedy Under Article XIII B of the California Constitution.*

 Barratt petitioned for a writ of mandate, alleging that the City caused ongoing injury to Barratt, other builders, and consumers by failing to conduct an annual financial audit and adopt a subsequent fee reduction, in violation of article XIII B, section 1.5, of the California Constitution. It states: "The annual calculation of the appropriations limit *under this article* for each entity of local government shall be reviewed as part of an annual financial audit." (Cal. Const., art. XIII B, § 1.5, italics added.) However, article XIII B expressly governs government *spending,* not taxation and revenues. "While article XIII A was aimed at controlling ad valorem property taxes and imposition of new special taxes [citation], article XIII B is directed at controlling government spending." (*County of Placer v. Corin* (1980) 113 Cal.App.3d 443, 449 [170 Cal.Rptr. 232].)

Nevertheless, Barratt argues that the City must audit the revenues received from building permit and review fees to determine whether it has any surplus fees that would constitute "proceeds of taxes." Article XIII B of the California Constitution imposes total annual "appropriations subject to limitation" (*id.,* § 1), defining that term as "any authorization to expend during a fiscal year the *proceeds of taxes* levied by or for [the local government] entity." (Cal. Const., art. XIII B, § 8, subd. (b), italics added.) " 'Proceeds of taxes' shall include . . . all tax revenues and the proceeds to an entity of government, from (1) regulatory licenses, user charges, and user fees to the extent that those proceeds exceed the costs reasonably borne by that entity in providing the regulation, product, or service, and (2) the investment of tax revenues." (*Id.,* § 8, subd. (c).)

■ However, as the City correctly notes, an article XIII B annual financial audit must only *identify* "proceeds of taxes," including regulatory fees that "exceed the costs reasonably borne" in providing regulatory services. (Cal. Const., art. XIII B, § 8, subd. (c).) Neither section 1.5 nor section 8 of article XIII B states that those costs must be actual costs, rather than reasonable estimates, or that the fee-cost relationship must be determined over the course of a single year. In short, those sections do not impose a duty on local government to conduct an annual audit of its "proceeds of taxes."

4. *Resolution No. 02-023 Is Subject to Challenge Under Section 66022.*

Resolution No. 02-023 establishes, as did the prior two resolutions, a "comprehensive fee schedule" for many municipal services. Most of the fees in resolution No. 02-023 remained the same as in resolution No. 00-268, except for the establishment of some new fees that are not at issue here. It is not contested that Barratt failed to meet section 66022's limitations period regarding the 1999 and 2000 ordinances, but complied with that period regarding the 2002 ordinance.

Nevertheless, the City contends that, despite Barratt's timely challenge to the 2002 ordinance, resolution No. 02-023 is not subject to a validation action because it was not an ordinance or resolution "adopting a new fee or service charge, or modifying or amending an existing fee or service charge" within the meaning of section 66022. Section 66022, subdivision (a), authorizes "[a]ny judicial action or proceeding to attack, review, set aside, void, or annul an ordinance, resolution, or motion adopting a new fee or service charge, or modifying or amending an existing fee or service charge." The City argues that the permit fees have not changed since June 2000 (when Barratt began construction), and that Barratt should have sued within 120 days of the City's initial July 1999 adoption of its permit fee schedule in resolution No. 99-146. Although Barratt sued within 120 days of the adoption of resolution No. 02-023 (in January 2002), that challenge to the validity of the ordinance was too late.

The Court of Appeal agreed with the City. It found that the 2002 ordinance only reenacted and continued the previous fee ordinance, the 50-cent difference was apparently a typographical error, and a reenactment is not a "new fee or service charge, or modif[ication] or amend[ment of] an existing fee or service charge." (§ 66022, subd. (a).)

Barratt does not contest that the 50-cent difference in the 2002 ordinance was merely a typographical error. But it argues that, even though the building permit and plan review fees essentially remained the same, the legislative

action extending the allegedly excessive fees is nonetheless subject to attack under section 66022. As explained *post*, we agree with Barratt.

The 2002 reenactment of the previous building permit and plan review fees constituted a "modif[ication] or amend[ment of] an existing fee or service charge." (§ 66022, subd. (a).) Although the *amount* of the permit and plan review fees remained the same, resolution No. 02-023 changed the *duration* of the fee by extending its applicability, and by implication its validity. This change is significant when considered with a local agency's statutory duties. Local agencies may not impose fees that exceed the *estimated* reasonable costs of providing the services for which the fees are charged. (§§ 66014, subd. (a), 66016, subd. (a).) "If, however, the fees or service charges create revenues *in excess of actual cost*, those revenues *shall be used* to reduce the fee or service charge creating the excess." (§ 66016, subd. (a), italics added; see *Larson v. State Personnel Bd.* (1994) 28 Cal.App.4th 265, 276 [33 Cal.Rptr.2d 412] ["The ordinary meaning of 'shall' or 'must' is of mandatory effect . . . ."].) However, the applicable statutes do *not* specify how often the local agencies must make the required accounting. As Barratt points out, if a fee was not challenged at its initial enactment, then the validity of all subsequent reenactments would be immune to judicial challenge or review. Thus, there would be no effective enforcement mechanism to ensure that local agencies are complying with their duty to reduce the fees if revenues exceed actual costs. Barratt further argues that this immunity from judicial review creates an incentive for local agencies to overvalue the estimated costs of services and then continually readopt that fee.

We find Barratt's arguments to be persuasive, especially in light of the facts in this case. In accordance with section 66016, subdivision (a), the City made public the data supporting its fee calculations before its scheduled public hearing. After a public hearing and adoption of resolution No. 02-023, the City published those fees in its "new comprehensive fee schedule,"[5] stating it "resolve[d] that the following fees are *established*." (Italics added.) When the City adopted that resolution, it implicitly represented that the building permit and plan review fees continued to be valid. This determination would have or should have required some type of accounting of operating expenses and revenues, resulting in either surplus revenues, a deficit, or no required change in the fees.

---

[5] Resolution No. 02-023 contained the following description: "A resolution of the City Council of the City of Rancho Cucamonga, California, establishing a new comprehensive fee schedule for permits and services provided by all city departments, the Rancho Cucamonga Fire Protection District and the Rancho Cucamonga Police Department, by modifying certain fees established in Resolution 00-286."

Here, although the building permit fees remained the same, other fees included in the 2002 comprehensive fee resolution had changed. As Barratt argues, the City's reenactment of its building permit fees as part of a revised comprehensive fee resolution is analogous to legislation at the state level that amends a portion of a statute while leaving the unamended portion unchanged. Under the "reenactment rule" of statutory interpretation, the unamended portion of the statute is reenacted with the enactment of the amendment, so that the statute is deemed to have been acted on as a whole.[6] (See *Brown v. Superior Court* (1982) 33 Cal.3d 242, 251–252 [188 Cal.Rptr. 425, 655 P.2d 1260]; *People v. Scott* (1987) 194 Cal.App.3d 550, 554–556 [239 Cal.Rptr. 588].) Thus, resolution No. 02-023 reflects the City's judgment that the fees charged do not exceed the estimated reasonable cost of providing the services for which the fee is charged, as those costs were estimated and projected into the future from the date of enactment of resolution No. 02-023.

We conclude that, contrary to the Court of Appeal's holding, Barratt could seek to invalidate the building permit and plan review fees in resolution No. 02-023, and that its challenge was timely as to applicable claims arising after January 16, 2002, the effective date of the resolution.

> 5. *Writ of Mandate Is Not an Available Remedy to Enforce a Local Agency's Duty Under Section 66016 in this Case Because Barratt Has or Had an Adequate Legal Remedy.*

Barratt alleges that the City has a "continuing pattern" of refusing to perform its statutory duty to review and adjust building permit fees. Accordingly, Barratt sought a writ of mandate to compel the City to conduct a review and apply any surplus building permit and plan review fees to reduce prospective fees, in compliance with section 66016. The Court of Appeal held that a mandamus action under section 66016 was either untimely under section 66022 or inappropriate. The court concluded that the mandamus cause of action was essentially a facial challenge to the building permit fees, and that Barratt failed to seek a validation action in a timely manner. It further

---

[6] Relying on a different rule of statutory interpretation, the City argues that the reenactment continues the effect of the unmodified portion of a statute unabated and without interruption. (*In re Dapper* (1969) 71 Cal.2d 184, 189 [77 Cal.Rptr. 897, 454 P.2d 905] [where a statute is repealed and at the same time reenacted without substantial change, there is no break in the continuous operation of the old statute, and no abatement of any legal consequences of acts done under the old statute]; *Orange County Water Dist. v. Farnsworth* (1956) 138 Cal.App.2d 518, 524–525 [292 P.2d 927]; *Sobey v. Molony* (1940) 40 Cal.App.2d 381, 385 [104 P.2d 868].) Both rules seek to determine and effectuate legislative purpose and intent and can be reconciled as applied to this case. The reenactment continues the effect of the unmodified portion of the ordinance unabated to the extent that any payment obligations under resolution No. 00-268 continue and are not interrupted even though that resolution had been superseded by resolution No. 02-023.

concluded that courts cannot command any action under sections 66014 and 66016 because the fees are set and revised by the exercise of legislative discretion. We agree with the Court of Appeal that a writ of mandate is not an available remedy in this case, but for a different reason: Barratt has or had an adequate legal remedy.

As discussed above, the reenactment of the building permit and plan review fees in resolution No. 02-023 constituted a modification or amendment of those fees, which were subject to validation under section 66022. The same holds true for resolutions No. 99-146 and No. 00-268, because the City followed the same public hearing procedures and reestablished a comprehensive fee schedule as it did with resolution No. 02-023. In adopting those resolutions, the City implicitly represented it had complied with section 66016. That is, resolutions No. 99-146, No. 00-268, and No. 02-023 represented, as of their effective dates, reasonable estimates of costs and revenues, including proper adjustments for over- or under-recovery under previous fee structures. In other words, the City presumably performed the very same financial analysis under section 66016 that Barratt's mandamus cause of action demanded. Thus, Barratt's allegation in its mandamus action that the City had continually refused to perform its statutory duty to review and adjust building permit fees is inconsistent with its assertion in its validation action that the City conducted a review, but reenacted invalid new and amended permit fees.

The fact that Barratt is time-barred from challenging the facial validity of the fee schedules in resolutions No. 99-146 and No. 00-268 does not change the result. Where the Legislature has provided for a validation action to review government actions, mandamus is unavailable to bypass the statutory remedy after the limitations period has expired. (*Embarcadero Mun. Improvement Dist. v. County of Santa Barbara* (2001) 88 Cal.App.4th 781, 789–793 [107 Cal.Rptr.2d 6]; *Hills for Everyone v. Local Agency Formation Com.* (1980) 105 Cal.App.3d 461, 467–468 [164 Cal.Rptr. 420].) As for resolution No. 02-023, because we find that Barratt may facially challenge the permit fees therein, a parallel mandate action would be unnecessary and inappropriate. (See Code Civ. Proc., § 1086 [writ of mandate must be issued where there is *not* a plain, speedy, and adequate remedy in the ordinary course of law.].) In light of this disposition, we need not determine whether the Court of Appeal correctly held that courts cannot enforce a local agency's section 66016 duty to review and adjust building permit fees by way of a writ of mandate.

### III. DISPOSITION

We reverse the judgment of the Court of Appeal relating to the dismissal of the resolution No. 02-023 validation action (fifth cause of action) and affirm its judgment in all other respects. The matter is remanded to the Court of Appeal with directions to modify the judgment of the trial court and order reinstatement of the validation action challenging resolution No. 02-023, and to affirm the judgment as amended.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Coffee, J.,* concurred.

---

*Associate Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.