[No. H035573. Sixth Dist. Mar. 24, 2011.]

TRINITY PARK, L.P., et al., Plaintiffs and Appellants, v.
CITY OF SUNNYVALE, Defendant and Respondent.

1016

## Counsel

Sheppard Mullin Richter & Hampton, David P. Lanferman, James G. Higgins and Brenna E. Moorhead for Plaintiffs and Appellants.

Goldfarb & Lipman, Juliet E. Cox, Barbara E. Kautz; David E. Kahn, City Attorney, and Robert L. Boco, Assistant City Attorney, for Defendant and Respondent.

Burke, Williams & Sorensen, Thomas B. Brown and Amy E. Hoyt for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

Kyra Kazantzis, James F. Zahradka II and Melissa A. Morris for Law Foundation of Silicon Valley and Public Interest Law Firm as Amici Curiae on behalf of Defendant and Respondent.

Michael Rawson for Public Interest Law Project and California Affordable Housing Project as Amici Curiae on behalf of Defendant and Respondent.

OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.—**

## I. INTRODUCTION

Appellants Trinity Park, L.P., and Classic Communities, Inc. (hereafter, collectively, Trinity), are the developers of a residential housing project known as Trinity Park, which consists of 42 houses in a subdivision located in respondent City of Sunnyvale (City). The City's 2007 approval of the Trinity Park development was conditioned upon compliance with the City's below market housing ordinance, which required Trinity to sell five houses in the subdivision at below market prices. In 2009, after substantial construction of the project, Trinity filed a complaint in which it sought to invalidate the City's below market housing requirement as applied to the Trinity Park development.

The City demurred to the complaint on the ground that it was time-barred under the 90-day limitation periods provided by the applicable statutes of limitation, Government Code sections 65009, subdivision (c)(1)(E) (challenges to conditions on development permits) and 66499.37 (challenges to conditions on subdivision development).[1] In opposition, Trinity argued that those statutes did not apply and its complaint was timely filed under the 180-day limitations period provided by section 66020 (challenges to development fees, dedications, reservations and "other exactions" imposed as condition of development project approval), which had not begun to run due to the City's failure to give the requisite notice. The trial court sustained the City's demurrer without leave to amend and entered a judgment of dismissal from which Trinity appeals.

---

[1] All statutory references hereafter are to the Government Code unless otherwise indicated.

For reasons that we will explain, we determine that a requirement that a subdivision developer sell a certain percentage of a subdivision's houses at below market prices as a condition of development approval does not constitute a development fee, dedication, reservation or "other exaction" within the meaning of section 66020 where, as here, the affordable housing requirement was clearly not intended to "defra[y] all or a portion of the cost of public facilities related to the development project." (§ 66000, subd. (b); see *Barratt American, Inc. v. City of Rancho Cucamonga* (2005) 37 Cal.4th 685, 696 [37 Cal.Rptr.3d 149, 124 P.3d 719] (*Barratt*).)

We therefore conclude, as a matter of law, that section 66020 does not apply and Trinity's complaint was untimely filed under both section 66499.37 and section 65009, subdivision (c)(1)(E). Accordingly, the trial court did not err in sustaining the City's demurrer without leave to amend and we will affirm the judgment of dismissal.

## II. FACTUAL BACKGROUND

Since this appeal concerns a judgment of dismissal upon an order sustaining a demurrer without leave to amend, our summary of the facts is drawn from the properly pleaded factual allegations of the complaint and those matters properly subject to judicial notice. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569] (*Schifando*).)

Trinity is the owner and developer of a residential housing project known as Trinity Park in the City of Sunnyvale. In 2007, the City approved Trinity's application for rezoning, a special development permit allowing 42 single-family homes, and a tentative map subdividing four lots into 42 lots and one common lot. One of the City's conditions for granting approval of Trinity's application for the development of Trinity Park was compliance with the City's below market housing ordinance.

Adopted in 1980, the below market housing ordinance as amended provides that where the proposed development includes more than nine units, "For ownership units, twelve and one-half percent of the total number of dwelling units . . . within the development shall be maintained as below market rate." (Sunnyvale Mun. Code, § 19.66.020, subd. (a)(1).)[2] A developer may pay an "in-lieu fee" instead of providing below market rate units only if the proposed development consists of between nine and 19 parcels or units. (Mun. Code, § 19.66.090, subd. (a).) The below market housing ordinance also provides that where a proposed residential development project is subject to the below market rate housing requirement, any tentative map, use permit

---

[2] All references to Municipal Code hereafter are to the Sunnyvale Municipal Code.

or special development permit approving the project must include conditions "sufficient to ensure compliance" with the ordinance. (Mun. Code, § 19.66.020, subd. (b).) A residential development providing at least 10 percent below market rate units is entitled to priority processing of required city permits and approvals. (Mun. Code, § 19.66.120.)

In 2008, the City and Trinity entered into a "Below Market Rate Developer Agreement" that the City recorded. Among other provisions, the agreement states that Trinity is required to sell five houses at below market purchase prices of $246,821 for three-bedroom units and $269,115 for four-bedroom units. In addition, each "BMR [(below market rate)] unit" is to be first offered for sale to the City or its designee. The agreement further states that the estimated completion date for the units was June 30, 2009.

In a letter to the City dated August 5, 2009, captioned "Notice of Protest and Statement of Objections—Below Market Rate ('BMR') Housing Requirements," Trinity stated that it was providing notice, pursuant to sections 66020 and 66021, that any contracts to sell houses in Trinity Park for less than market value "should be deemed to be executed or submitted, and continue to be executed or submitted, under protest and subject to full reservation of rights to seek relief therefrom." Trinity also argued that the City's "BMR exactions" were unlawful for several reasons: (1) due to the lack of reasonable relation to the development's impacts, the "BMR exactions" constituted special taxes requiring a two-thirds vote of the electorate; (2) improper shifting of the cost of affordable housing; (3) failing to allow a credit for revenue generated by new residents; (4) inconsistency with the City's general plan; and (5) preemption by state laws.

There is no indication in either the complaint or the matters subject to judicial notice that Trinity has sold any houses in the Trinity Park development at below market purchase prices.

## III. PROCEDURAL BACKGROUND

### A. *The Complaint*

On December 17, 2009, Trinity filed its complaint against the City arising from the Trinity Park development. Without specifically mentioning the City's below market housing ordinance, Trinity claimed that the City's below market rate "housing policies" and "BMR exactions" were unlawful. According to Trinity, the City's requirement that Trinity sell five houses at below market prices as a condition of approval of its application to develop Trinity Park violated several California laws, constituted an unconstitutional taking, was a "disguised 'special tax,' " and was arbitrary and excessive.

Trinity also alleged that it had executed the "Below Market Rate Developer Agreement" "under duress and compulsion as apparently non-negotiable conditions of submitting and processing the necessary development applications." Additionally, Trinity alleged that it "continued to perform very substantial work" on Trinity Park, including installing "infrastructure and other public improvements," while continuing to "question the validity or justification for the disputed BMR housing exactions." Trinity also complained that the City had "not provided any relief from said invalid and unjustified fees and exactions . . . ." Finally, Trinity asserted that it had "duly and timely submitted written Statements of Protest and objections to such BMR exactions as provided by [sections] 66020 and 66021, and the common law of California."

The complaint included two causes of action for declaratory relief in which Trinity sought invalidation of the City's below market housing requirement as applied to the Trinity Park development. In three other causes of action Trinity sought a refund, injunctive relief, and a writ of mandate directing the City "to vacate the invalid BMR housing exactions conditions to this Project, and the underlying BMR housing policies, and to conform [the City's] imposition of any other 'affordable housing' exaction or fee to State law as set forth herein."

### B. *The City's Demurrer*

The City demurred to Trinity's complaint on three grounds, including the affirmative defenses of the statute of limitations and equitable estoppel, as well as failure to state a cause of action under the applicable laws.

Regarding the statute of limitations, the City contended that the complaint was time-barred under section 66499.37, which is part of the Subdivision Map Act (§ 66410 et seq.). Section 66499.37 provides a 90-day limitations period to challenge the decision of a legislative body "concerning a subdivision." The City argued that Trinity had only 90 days after tentative map approval in 2007 to file its complaint because all of Trinity's claims arose from the below market housing requirement imposed as a condition of the tentative map approval for the Trinity Park subdivision. Since the complaint was not filed until 2009, the City asserted that the complaint was untimely filed. The City also contended that the complaint was similarly time-barred under section 65009, subdivision (c)(1)(E), which provides a 90-day limitations period for a challenge to the "reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit."

Anticipating Trinity's argument that the applicable statute of limitations was instead found in sections 66020 and 66021 (two provisions of the

Mitigation Fee Act, § 66000 et seq.), the City noted that those provisions expressly apply only to " 'fees, dedications, reservations, or other exactions.' " The City argued that the below market housing requirement imposed on Trinity Park did not constitute a fee, dedication, reservation, or "other exaction" because it did not require Trinity "to pay anything to the City, to give the City a possessory interest in real property, or to build anything for the City."

In addition, the City argued that the complaint was barred under the doctrine of equitable estoppel because Trinity had "substantially built Trinity Park" after agreeing to the below market housing requirement. As to its contention that Trinity had failed to state a cause of action, the City argued that under the relevant authorities Trinity's claim that the below market housing ordinance was invalid lacked merit as a matter of law.

C. *Trinity's Opposition*

Trinity argued that its complaint was timely filed under the statute of limitations provided by sections 66020 and 66021 for challenges to below market rate "exactions." It asserted that it had filed a timely protest to the "BMR exactions" in 2009, in compliance with the protest procedure set forth in section 66020, while the City had failed to give the notice required to trigger the section 66020 limitations period of 180 days for an action challenging an exaction, and therefore the limitations period had not begun to run.

The 90-day limitations period provided by section 66499.37 did not apply, in Trinity's view, because that statute of limitations only applies to a challenge to a condition of tentative subdivision map approval. Trinity also rejected the application of the 90-day limitations period provided by section 65009, subdivision (c)(1)(E) for a challenge to a condition attached to a development permit, on the ground that section 65009, subdivision (c)(1)(E) was less specific than section 66020.

Trinity further argued that the merits of the complaint could not be resolved on demurrer for two reasons. First, Trinity claimed that imposition of a mandatory below market housing requirement on its Trinity Park development constituted a constraint on housing that was not authorized under state law. Second, Trinity asserted that it had entered into the "Below Market Rate Developer Agreement" under duress, and therefore the court could not take judicial notice of the agreement.

Finally, Trinity argued that the City's equitable estoppel claim lacked merit because the record would not support a showing that the City had changed its

position in reliance on the below market housing rate requirement imposed on the Trinity Park development.

### D. *The Trial Court's Order*

On April 20, 2010, the trial court issued its order sustaining the City's demurrer without leave to amend on the ground that the complaint was untimely filed. The order also granted the parties' requests for judicial notice of various City ordinances and records pertaining to the Trinity Park development and the City's below market rate housing requirement, including the "Below Market Rate Developer Agreement" between the City and Trinity.

The trial court determined that the applicable statute of limitations was section 66499.37, since that statute provides that any action attacking the decision of a legislative body concerning a subdivision, or the validity of a condition attached to a subdivision, must be commenced and the service of summons effected within 90 days after the date of the decision.

Further explaining its determination, the trial court stated, "[Trinity's] complaint seeks to challenge the constitutionality of [the City's] below market housing ordinance (BMR) along with the legality and validity of the BMR conditions imposed on them in the BMR agreement they signed in order to obtain permits. [Trinity was] required to execute the BMR agreement prior to the issuance of a permit for the project. [Citation.] This lawsuit was not commenced until December 17, 2009 despite the fact that the BMR conditions were imposed in September of 2007 when Trinity Park's tentative subdivision map was approved, and were memorialized in April 2008 in the recorded BMR agreement. Therefore, the 90 day limitations period has run even when calculated from the more recent April 2008 time period."

The trial court also reasoned that even "assuming that the BMR requirements constitute [an] 'other exaction,' " and therefore the 180-day limitations period provided by sections 66020 and 66021 applied, the complaint was still untimely because "notice of the BMR conditions was provided to [Trinity] both in 2007 and in the April 2008 BMR agreement and this lawsuit was not filed within 180 days of [the City] providing this notice to [Trinity]."

Leave to amend was denied because the trial court concluded that the complaint could not be amended to cure the statute of limitations defect. The City's other arguments regarding the merits of the action and the affirmative defense of equitable estoppel were rejected by the court as not "well taken."

Judgment of dismissal was entered on April 28, 2010. Trinity subsequently filed a timely notice of appeal.

## IV. DISCUSSION

On appeal, Trinity contends that the trial court erred in sustaining the City's demurrer on statute of limitation grounds, since its complaint was timely filed under the applicable statute of limitations provided by sections 66020 and 66021. Trinity also argues that the sufficiency of its complaint cannot be challenged on any other grounds at the pleading stage.[3] Before addressing Trinity's contentions, we will outline the applicable standard of review.

### A. *Standard of Review*

On appeal from a judgment of dismissal after a demurrer is sustained without leave to amend, the reviewing court assumes the truth of all facts properly pleaded by the plaintiff. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394].) "We also accept as true all facts that may be implied or reasonably inferred from those expressly alleged. [Citation.]" (*Rotolo v. San Jose Sports & Entertainment, LLC* (2007) 151 Cal.App.4th 307, 320–321 [59 Cal.Rptr.3d 770].) Further, we give the complaint a reasonable interpretation, and read it in context. (*Schifando, supra,* 31 Cal.4th at p. 1081.) But we do not assume the truth of " ' "contentions, deductions or conclusions of fact or law." ' " (*Evans v. City of Berkeley, supra,* 38 Cal.4th at p. 6.)

We also consider matters that may be judicially noticed. (Code Civ. Proc., § 430.30, subd. (a); *Schifando, supra,* 31 Cal.4th at p. 1081.) Among other things, the Evidence Code provides that judicial notice may be taken of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subd. (h).) We may therefore take judicial notice of an agreement where "there is and can be no factual dispute concerning the contents of the agreements. [Citation.]" (*Performance Plastering v. Richmond American Homes of California, Inc.*

---

[3] We granted the joint application of the Affordable Housing Network of Santa Clara County, the California Coalition for Rural Housing, the Law Foundation of Silicon Valley, the Non-Profit Housing Association of Northern California, the Public Interest Law Project, the Southern California Association of Non-Profit Housing, and the San Diego Housing Federation, as well as the joint application of the League of California Cities and the California State Association of Counties, for leave to file an amicus curiae brief on behalf of respondent City. Trinity has filed a combined answer to both amicus curiae briefs.

We also granted the requests filed by Trinity and by amici curiae for judicial notice of certain documents believed to show relevant legislative history. However, we will disregard "letters to the Governor from individual legislators and private persons reflecting their understanding of the purpose and effect of legislation . . . ." (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 8, fn. 2 [32 Cal.Rptr.2d 244, 876 P.2d 1043] (*Hensler*).)

(2007) 153 Cal.App.4th 659, 666, fn. 2 [63 Cal.Rptr.3d 537].) However, we keep in mind the general rule that "[w]hen judicial notice is taken of a document . . . the truthfulness and proper interpretation of the document are disputable. [Citation.]" (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9 [84 Cal.Rptr.2d 843, 976 P.2d 214].)

■ The Evidence Code also expressly provides for judicial notice of a public entity's legislative enactments (Evid. Code, § 452, subd. (b)) and official acts (*id.*, subd. (c)). Thus, we may take notice of local ordinances (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 24 [157 Cal.Rptr. 706, 598 P.2d 866]) and the official resolutions, reports, and other official acts of a city (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 907 [117 Cal.Rptr.2d 631]).

"We also consider the complaint's exhibits. [Citations.] Under the doctrine of truthful pleading, the courts 'will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed.' [Citation.] 'False allegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed [citation], may be disregarded . . . .' [Citations.]" (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 [102 Cal.Rptr.3d 72].)[4]

After reviewing the allegations of the complaint, the complaint's exhibits, and the matters properly subject to judicial notice, we exercise our independent judgment as to whether the complaint states a cause of action as a matter of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) Where, as here, the trial court denied leave to amend the complaint following the sustaining of a demurrer, we review the court's determination that no amendment could cure the defect in the complaint for abuse of discretion. (*Schifando, supra*, 31 Cal.4th at p. 1081.) "If we see a reasonable possibility that the plaintiff could cure the defect by amendment, then we conclude that the trial court abused its discretion in denying leave to amend. If we determine otherwise, then we conclude it did not. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 [25 Cal.Rptr.3d 320, 106 P.3d 976].)

---

[4] Under the doctrine of truthful pleading, we will disregard the allegations in Trinity's complaint indicating that the City's approval of Trinity's application to build the Trinity Park development was conditioned upon the payment of fees in lieu of selling units at below market prices, since the matters subject to judicial notice and the relevant municipal ordinances clearly show that Trinity was not required to pay any in-lieu fees. (*Hoffman v. Smithwoods RV Park, LLC, supra*, 179 Cal.App.4th at p. 400.)

■ In the present case, the City has demurred on the primary ground that the action is time-barred under the affirmative defense of the statute of limitations. We independently determine the merits of the demurrer under the following standard: " ' "A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint [and matters subject to judicial notice]; it is not enough that the complaint shows that the action may be barred. [Citation.]" [Citation.]' [Citation.]" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 [105 Cal.Rptr.3d 181, 224 P.3d 920]; see Code Civ. Proc., § 430.30, subd. (a).)

The City's chief argument in support of its demurrer was that Trinity's complaint was time-barred under both section 66499.37 and section 65009, subdivision (c)(1)(E), while Trinity opposed the demurrer on the ground that its complaint was timely filed under sections 66020 and 66021. We will begin our evaluation of the merits of the City's demurrer with an overview of each statute of limitations.

### B. *Section 66499.37*

■ Section 66499.37 is the statute of limitations provided by the Subdivision Map Act (§ 66410 et seq.). The Subdivision Map Act "generally requires all subdividers of property to design their subdivisions in conformity with applicable general and specific plans and to comply with all of the conditions of applicable local ordinances. [Citation.]" (*Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 997 [129 Cal.Rptr.2d 869, 62 P.3d 103].) "By generally requiring local review and approval of all proposed subdivisions, the Act aims to 'control the design of subdivisions for the benefit of adjacent landowners, prospective purchasers and the public in general.' [Citation.]" (*Ibid.*) The Subdivision Map Act accordingly authorizes conditions of approval for tentative subdivision maps. (§ 66458, subd. (a); *Friends of Riverside's Hills v. City of Riverside* (2008) 168 Cal.App.4th 743, 755 [85 Cal.Rptr.3d 695] (*Friends of Riverside's Hills*).) In short, " 'the Subdivision Map Act constitutes the major land use permit control vehicle for urban planning and environmental protection. [Citations.]' [Citations.]" (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 564 [6 Cal.Rptr.3d 746].)

Section 66499.37 provides in part, "Any action or proceeding to attack, review, set aside, void, or annul the decision of an advisory agency, appeal board, or legislative body concerning a subdivision, or of any of the proceedings, acts, or determinations taken, done, or made prior to the

decision, or to determine the reasonableness, legality, or validity of any condition attached thereto, including, but not limited to, the approval of a tentative map or final map, shall not be maintained by any person unless the action or proceeding is commenced and service of summons effected within 90 days after the date of the decision. Thereafter all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the decision or of the proceedings, acts, or determinations."

The California Supreme Court has stated that section 66499.37 " 'manifests a legislative purpose that a *decision* . . . approving a subdivision map and attaching a *condition* thereto, shall be judicially attacked within [the limitation period of section 66499.37], or not at all.' (Original italics.)" (*Hensler, supra*, 8 Cal.4th at p. 27.) Moreover, "[s]ection 66499.37 was enacted to ensure that *any* challenge to local legislative or administrative acts or decisions taken pursuant to ordinances enacted under the authority of the Subdivision Map Act will be brought promptly." (*Hensler, supra*, at p. 7, italics added.) "[T]he validity of the action must be determined to afford the local entity the opportunity to rescind its action rather than pay compensation for a taking." (*Ibid.*)

In light of this legislative intent, section 66499.37 has been given broad application. (*Friends of Riverside's Hills, supra*, 168 Cal.App.4th at p. 750.) Section 66499.37 therefore applies to any action arising from the Subdivision Map Act. (*Hensler, supra*, 8 Cal.4th at p. 24.)

C. *Section 65009, Subdivision (c)(1)(E)*

Section 65009, subdivision (c)(1)(E) provides, with certain exceptions not relevant here, that "no action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision: [¶] . . . [¶] . . . to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit."

The application of section 65009 was addressed by the California Supreme Court in *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757 [16 Cal.Rptr.3d 404, 94 P.3d 538] (*Travis*). "Located in division 1 (Planning and Zoning) of title 7 (Planning and Land Use) of the Government Code, section 65009 is intended 'to provide certainty for property owners and local governments regarding decisions made pursuant to this division' (§ 65009, subd. (a)(3)) and thus to alleviate the 'chilling effect on the confidence with which property owners and local governments can proceed with projects' (*id.*, subd. (a)(2)) created by potential legal challenges to local planning and zoning decisions." (*Travis, supra*, 33 Cal.4th at p. 765.)

■ "To this end, section 65009 establishes a short statute of limitations, 90 days, applicable to actions challenging several types of local planning and zoning decisions: the adoption of a general or specific plan (*id.*, subd. (c)(1)(A)); the adoption of a zoning ordinance (*id.*, subd. (c)(1)(B)); the adoption of a regulation attached to a specific plan (*id.*, subd. (c)(1)(C)); the adoption of a development agreement (*id.*, subd. (c)(1)(D)) *and the grant, denial, or imposition of conditions on a variance or permit* (*id.*, subd. (c)(1)(E)). Subdivision (e) of the statute provides that after expiration of the limitations period, 'all persons are barred from any further action or proceeding.' " (*Travis, supra*, 33 Cal.4th at pp. 765–766, italics added.)

In *Travis*, the plaintiff received a development permit allowing him to construct a second dwelling unit on his property in unincorporated Santa Cruz County. (*Travis, supra*, 33 Cal.4th at p. 764.) The development permit was subject to conditions imposed under a county ordinance allowing the construction of affordable dwelling units, including restrictions on unit size, rent, and tenant income. (*Id.* at p. 763.) The plaintiff challenged the occupancy and rent restrictions by filing an administrative appeal and a subsequent petition for writ of mandate, which was denied by the trial court on the ground that it was untimely filed under section 65009, subdivision (c)(1)(E). (33 Cal.4th at pp. 764–765.)

■ The California Supreme Court agreed that the limitations period applicable to the plaintiff's action was the 90-day limitations period provided by section 65009, subdivision (c)(1)(E), because the action was brought in part to determine the validity of the conditions imposed on his development permit and to " 'void, or annul' the decisions imposing those conditions. [Citation.]" (*Travis, supra*, 33 Cal.4th at p. 766.) The court stated, "[s]ection 65009, subdivision (c)(1)(E), in setting a time limit for actions challenging permit conditions, does not purport to restrict the legal theories or claims that may be made in such an action, and we see no justification for reading such a substantive limitation into the clear procedural language of the statute." (*Travis, supra*, 33 Cal.4th at p. 767.) Because the plaintiff sought a finding that the county ordinance "cannot be applied against him, and relief in the form of removal of the conditions on his permit, his challenge is to the County's adjudicatory decision imposing the conditions and comes within section 65009, subdivision (c)(1)(E)." (*Travis, supra*, at p. 769, fn. omitted.) However, since the plaintiff had filed the petition for writ of mandate within 90 days of the final administration action on his permit (denial of an administrative appeal), the court found that his action was timely filed. (*Id.* at p. 767.)

D. *Sections 66020 and 66021*

Sections 66020 and 66021 are provisions of the Mitigation Fee Act (§ 66000 et seq.). The Mitigation Fee Act "sets forth procedures for protesting the imposition of fees and other monetary exactions imposed on a development by a local agency. As its legislative history evinces, the Act was passed by the Legislature 'in response to concerns among developers that local agencies were imposing development fees for purposes unrelated to development projects.' [Citations.]" (*Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 864 [50 Cal.Rptr.2d 242, 911 P.2d 429] (*Ehrlich*); see also *Barratt, supra*, 37 Cal.4th at p. 691.)

Section 66021, subdivision (a) provides, "Any party on whom a fee, tax, assessment, dedication, reservation, or other exaction has been imposed, the payment or performance of which is required to obtain governmental approval of a development, as defined by Section 65927, or development project, may protest the establishment or imposition of the fee, tax, assessment, dedication, reservation, or other exaction as provided in Section 66020."

Subdivision (a) of section 66020 provides the protest procedure: "Any party may protest the imposition of any fees, dedications, reservations, or other exactions imposed on a development project, as defined in Section 66000, by a local agency by meeting both of the following requirements: [¶] (1) Tendering any required payment in full or providing satisfactory evidence of arrangements to pay the fee when due or ensure performance of the conditions necessary to meet the requirements of the imposition. [¶] (2) Serving written notice on the governing body of the entity, which notice shall contain all of the following information: [¶] (A) A statement that the required payment is tendered or will be tendered when due, or that any conditions which have been imposed are provided for or satisfied, under protest. [¶] (B) A statement informing the governing body of the factual elements of the dispute and the legal theory forming the basis for the protest."

Subdivision (d) of section 66020 provides the limitations period: "(1) A protest filed pursuant to subdivision (a) shall be filed at the time of approval or conditional approval of the development or within 90 days after the date of the imposition of the fees, dedications, reservations, or other exactions to be imposed on a development project. Each local agency shall provide to the project applicant a notice in writing at the time of the approval of the project or at the time of the imposition of the fees, dedications, reservations or other exactions, a statement of the amount of the fees or a description of the dedications, reservations, or other exactions, and notification that the 90-day approval period in which the applicant may protest has begun. [¶] (2) Any

party who files a protest pursuant to subdivision (a) may file an action to attack, review, set aside, void or annul the imposition of the fees, dedications, reservations, or other exactions imposed on a development project by a local agency within 180 days after the delivery of the notice. Thereafter, notwithstanding any other law to the contrary, all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the imposition."

■ The limitations period provided by section 66020, subdivision (d) has been summarized by the California Supreme Court as follows: "Local agencies must give project applicants written notice of the fee amount, indicating that they have 90 days to protest it. (§ 66020, subd. (d)(1).) Any party who files a protest may then file an action attacking the imposition of the fees within 180 days after delivery of the local agency's notice. (§ 66020, subd. (d)(2).)" (*Barratt, supra,* 37 Cal.4th at p. 691; see also *Branciforte Heights, LLC v. City of Santa Cruz* (2006) 138 Cal.App.4th 914, 925 [42 Cal.Rptr.3d 96] (*Branciforte*).)

The California Supreme Court has further stated that "section 66020, by its own terms, applies only to 'development fees' that alleviate the effects of development on the community and does *not* include fees for specific regulations or services." (*Barratt, supra,* 37 Cal.4th at p. 696.) Additionally, the court has emphasized that the Legislature, in enacting sections 66020 and 66021, "intended to require *all* protests to a development fee that challenge the sufficiency of its relationship to the effects attributable to a development project—regardless of the legal underpinnings of the protest—to be channeled through the administrative procedures mandated by the [Mitigation Fee] Act." (*Ehrlich, supra,* 12 Cal.4th at p. 866.)

E. *Analysis*

1. *The Parties' Contentions*

Trinity contends that the applicable limitations period for its action against the City is provided by sections 66020 and 66021, since the below market housing requirement imposed by the City on the Trinity Park development constitutes an "exaction" within the meaning of those sections. According to Trinity, "BMR housing exactions 'divest' Trinity Park of five new houses, regardless of whether the houses are deeded to the City or to the City's nominees . . . . An 'exaction'—unlike an ordinary land use 'regulation'—involves divesting a developer of either money or a possessory interest in the subject property. [Citation.]"

Trinity also argues that the 180-day limitations period provided by section 66020, subdivision (d)(2) has not begun to run since the City did not provide

the notice of the 90-day protest period that is required to trigger the limitations period. Trinity therefore maintains that its complaint was timely filed on December 17, 2009.

The City rejects Trinity's contention that the below market housing requirement constitutes an "exaction" within the meaning of sections 66020 and 66021. Relying on *Fogarty v. City of Chico* (2007) 148 Cal.App.4th 537 [55 Cal.Rptr.3d 795] (*Fogarty*), the City argues that "exaction" means a demand for money or property from a developer, which the developer may pay or perform under protest and, if the protest succeeds, obtain a refund or return of the unlawful portion of the exaction pursuant to section 66020, subdivision (e).[5] The City further argues that the refund or return remedy provided by section 66020, subdivision (e) cannot apply to the below market housing condition imposed on the Trinity Park development. Even assuming that Trinity had complied with this requirement under protest pursuant to the protest procedure of section 66020, subdivision (a)(1), the City asserts that it would not be able to refund or return houses now owned and occupied by others.

We agree with the parties that a potentially dispositive issue is whether the applicable limitations period for Trinity's action against the City arising from the below market housing requirement imposed on the Trinity Park development is the 180-day period provided by section 66020, subdivision (d)(2). If that statute of limitations applies, Trinity is correct that the 180-day limitations period has not begun to run since there is nothing in the complaint or the matters subject to judicial notice to show that the City gave Trinity the notice of the 90-day protest period that is required to trigger the 180-day limitations period, which runs from the date of the delivery of the notice. (§ 66020, subd. (d)(2); *Barratt, supra*, 37 Cal.4th at p. 691.)

■ As the parties point out, section 66020, subdivision (d)(1) provides that the 180-day limitations period set forth in section 66020, subdivision (d)(2) expressly applies to challenges to "fees, dedications, reservations, or other exactions to be imposed on a development project." The parties do not dispute that the below market housing requirement imposed on Trinity Park development project is not a fee, a dedication, or a reservation. The resolution of the issue therefore turns on whether the below market housing condition imposed on the Trinity Park development in accordance with the City's below market housing ordinance constitutes an "other exaction" within the meaning of sections 66020 and 66021.

---

[5] Section 66020, subdivision (e) provides, "If the court finds in favor of the plaintiff in any action or proceeding brought pursuant to subdivision (d), the court shall direct the local agency to refund the unlawful portion of the payment, with interest at the rate of 8 percent per annum, or return the unlawful portion of the exaction imposed."

### 2. Statutory Interpretation

The term "exaction" is not defined in either section 66020 or section 66021, or in any other provision of the Mitigation Fee Act. We will therefore apply the well-established de novo standard for statutory interpretation to determine the meaning of "exaction" in section 66021, subdivision (a) and section 66020, subdivision (d)(1) and (2), and, in turn, to determine whether the Legislature intended that a developer's action challenging a below market housing condition imposed on a development project be subject to the limitations period set forth in sections 66020 and 66021.

"In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.] In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" ' [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)

The California Supreme Court has also instructed that judicial notice may be taken of the legislative history of a statute in order to ascertain the purpose of and meaning of an ambiguous statute, including the reports of Senate and Assembly committees (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 46 [77 Cal.Rptr.2d 709, 960 P.2d 513]) and enrolled bill reports (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1218, fn. 3 [117 Cal.Rptr.3d 342, 241 P.3d 840]).

We will apply these general rules of statutory interpretation to determine the meaning of the term "other exaction" in sections 66020 and 66021.

### 3. The Meaning of "Other Exaction" in Sections 66020 and 66021

Amici curiae argue that both the statutory language of the Mitigation Fee Act (§ 66000 et seq.) and the legislative history for sections 66020 and 66021

show that the statute of limitations provided by the Act in section 66020, subdivision (d)(2) applies to exactions that are imposed on a development project to "defray the costs of traditional public improvements and facilities needed to accommodate new development . . . ." We agree.

### Statutory Language

Reading sections 66020 and 66021 " 'in the context of the statute as a whole and the overall statutory scheme,' " as we must (*Smith v. Superior Court, supra*, 39 Cal.4th at p. 83), we find statutory language indicating that an "exaction" within the meaning of sections 66020 and 66021 is an exaction that is (1) imposed by a local agency as a condition of approval of a development project; and (2) for the purpose of "defraying all or a portion of the cost of public facilities related to the development project." (§ 66000, subd. (b); see *Barratt, supra*, 37 Cal.4th at p. 696.) The relevant statutory language is found in several provisions of the Mitigation Fee Act, including section 66000, subdivision (b), section 66005, subdivision (a), and section 66010, subdivision (b).

Section 66000, subdivision (b) provides, " 'Fee' means a monetary exaction other than a tax or special assessment, whether established for a broad class of projects by legislation of general applicability or imposed on a specific project on an ad hoc basis, that is charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project . . . ."

Section 66005, subdivision (a) provides, "When a local agency imposes any fee or *exaction* as a condition of approval of a proposed development, as defined by Section 65927, or development project, those fees or *exactions* shall not exceed the estimated reasonable cost of providing the service or facility for which the fee or exaction is imposed." (Italics added.)

Section 66010, subdivision (b) provides, " 'Fee' means a monetary exaction or a dedication, other than a tax or special assessment, which is required by a local agency of the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project, but does not include fees for processing applications for governmental regulatory actions or approvals."

Given the Mitigation Fee Act's express references to a fee or exaction imposed to defray the cost of public facilities related to the development, and the express requirement that a fee or exaction not exceed a

reasonable cost, we find that the plain language of the pertinent provisions of the Mitigation Fee Act shows that the Legislature intended the 180-day limitations period provided by section 66020, subdivision (d)(2) to apply to an exaction imposed for the purpose of "defraying all or a portion of the cost of public facilities related to the development project." (§ 66000, subd. (b); see *Barratt, supra*, 37 Cal.4th at p. 696.)

Moreover, the California Supreme Court has stated, in reference to development fees, that "section 66020, by its own terms, applies only to 'development fees' that alleviate the effects of development on the community . . . ." (*Barratt, supra*, 37 Cal.4th at p. 696.) As discussed below, we find that the California Supreme Court's interpretation of section 66020 with respect to development fees also applies to an "other exaction" under the canon of statutory construction known as *ejusdem generis*, "which literally means ' " 'of the same kind' " ' [citation]." (*People v. Arias* (2008) 45 Cal.4th 169, 180 [85 Cal.Rptr.3d 1, 195 P.3d 103].)

 Under the canon of *ejusdem generis*, " '[w]hen a particular class of things modifies general words, those general words are construed as applying only to things of the same nature or class as those enumerated.' [Citation.] The canon 'presumes that if the Legislature intends a general word to be used in its unrestricted sense, it does not also offer as examples peculiar things or classes of things since those descriptions then would be surplusage.' [Citation.] This simply means that if a statute contains a list of specified items followed by more general words, the general words are limited to those items that are similar to those specifically listed." (*Clark v. Superior Court* (2010) 50 Cal.4th 605, 613–614 [112 Cal.Rptr.3d 876, 235 P.3d 171]; see *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141 [96 Cal.Rptr.2d 485, 999 P.2d 718].)

 Thus, pursuant to *ejusdem generis* "[t]he words 'other' or 'any other' following an enumeration of particular classes should be read therefore as *other such like* and to include only others *of like kind or character* [citations]." (*Scally v. Pacific Gas & Electric Co.* (1972) 23 Cal.App.3d 806, 819 [100 Cal.Rptr. 501].) Applying the rule of *ejusdem generis* to the enumeration of "fees, dedications, reservations, or other exactions" in section 66020, it is apparent that "exactions" is a more general word that follows a list of specified items (fees, dedications, and reservations). The meaning of the phrase "other exactions" must therefore be limited to exactions of like kind and character as the fees, dedications and reservations listed in section 66020 that are imposed for the purpose of "defraying all or a portion of the cost of public facilities related to the development project" (§ 66000, subd. (b)) or, as stated by the California Supreme Court, to "alleviate the effects of development on the community . . . ." (*Barratt, supra*, 37 Cal.4th at p. 696.)

*Legislative History*

We find that the legislative history of section 66020 supports our interpretation of the term "other exaction" in sections 66020 and 66021. This court has previously summarized the legislative history of section 66020 as follows: "Section 66020 was derived from former section 65913.5, which was . . . enacted in 1984 (Stats. 1984, ch. 653, § 1, pp. 2411–2412). The corresponding Legislative Counsel's Digest states: 'Existing law does not contain a procedure allowing a party to protest the imposition of any fees, taxes, assessments, dedications, reservations, or other exactions on residential housing developments by local government entities. [¶] This bill would permit any party to protest the imposition of those exactions in accordance with a specified procedure; [and] would permit any party who so protests to file an action to attack, review, set aside, void or annul those impositions . . . .' (Legis. Counsel's Dig., Sen. Bill No. 2136 (1983–1984 Reg. Sess.) Summary Dig., p. 222.)" (*Branciforte, supra*, 138 Cal.App.4th at p. 927.)

This court has also observed that, prior to the enactment of former section 65913.5, "a developer could not challenge the validity of fees imposed on a residential development without refusing to pay them. [Citation.] Since payment is a condition of obtaining the building permit, a challenge meant that the developer would be forced to abandon the project. The bill was drafted to correct to this situation. It provided a procedure whereby a developer could pay the fees under protest, obtain the building permit, and proceed with the project while pursuing an action to challenge the fees. If the action were successful, the fees would be refunded with interest." (*Shapell Industries, Inc. v. Governing Board* (1991) 1 Cal.App.4th 218, 241 [1 Cal.Rptr.2d 818] (*Shapell*).)

The original statute, former section 65913.5, was "renumbered [former section] 66008 in 1988 (Stats. 1988, ch. 418, § 4, p. 1787) and again renumbered 66020 in 1990 (Stats. 1990, ch. 1572, § 22)." (*Shapell, supra*, 1 Cal.App.4th at p. 241, fn. 5.) Throughout the legislative process that led to the current version of section 66020, the judicially noticeable legislative history documents have indicated that section 66020 and its prior versions concerned fees or other exactions that were imposed for the purpose of "defraying all or a portion of the cost of public facilities related to the development project" (§ 66000, subd. (b)) or, as restated by the California Supreme Court, to "alleviate the effects of development on the community . . ." (*Barratt, supra*, 37 Cal.4th at p. 696).

For example, the Assembly Committee on Housing and Community Development reported in 1984 that "[s]ince the enactment of Proposition 13, there has been a greater reliance by local government on fee revenues to support

service and processing activities and to finance the infrastructure needed for housing development. [¶] . . . [¶] SB 2136 [enacted as former section 65913.5] permits any party to protest the imposition of any fees, taxes, assessments, dedications, reservations or *other exactions* imposed by a local entity on housing development . . . . [¶] The party may file an action within 180 days after the imposition . . . . If the court finds in favor of the plaintiff, the court shall direct the local entity to refund the unlawful portion of the *exaction* plus 8 percent interest per annum." (Assem. Com. on Housing and Community Development, Rep. on Sen. Bill No. 2136 (1983–1984 Reg. Sess.) as amended June 18, 1984 [proposed amendment], p. 1, italics added.)

In 1985, an amendment to former section 65913.5 was introduced to address the concern that "new developments should pay for needed new municipal services and facilities, but not in excess of the burden that the development project creates. [The sponsors] argue that local governments may impose fees for new public facilities, such as freeway off-ramps, that are far removed from the development project and only remotely related to the needs of the project for municipal services. [¶] To address these alleged abuses of development fees and exactions, AB 2492 would provide a protest procedure for all developments under the Subdivision Map Act, similar to that afforded residential development last year in SB [2136]." (Assem. Com. on Local Government, Rep. on Assem. Bill No. 2492 (1985–1986 Reg. Sess.) May 14, 1985.)

In 1987, when Assembly Bill No. 1600 (1987–1988 Reg. Sess.) was introduced to amend former section 65913.5 and to renumber it as section 66008, the Assembly Committee on Local Government reported, "After listening to testimony from representatives of both the development community and local governments, the Chairpersons decided to introduce legislation which retained local agencies' authority to levy fees to finance infrastructure . . . ." (Assem. Com. on Local Government, Rep. on Assem. Bill No. 1600 (1987–1988 Reg. Sess.) as amended Apr. 6, 1987, p. 2.)

In 1990, when former section 66008 was amended and renumbered section 66020 and section 66021 (Stats. 1990, ch. 1572, § 22, pp. 7504–7505) was added, the Legislature's intent was to "consolidate the sections on developer fees, renumbe[r] the section on procedures adopting various fees, and mak[e] the corresponding changes in existing cross-references." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 3228 (1989–1990 Reg. Sess.) Aug. 21, 1990, p. 2.) The Senate Rules Committee noted "[t]here are numerous statutes scattered through the California Codes which relate to fees local agencies can charge for development . . . ." (*Id.*, at p. 1.)

In 1996, section 66000 was amended for the stated purpose of "clarifying the definition of 'fee' to mean a monetary exaction that is established for a

broad class of projects or charged on specific projects on an ad hoc basis used to defray the cost of public facilities, the need for which is caused, in some part, by the development project." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 3081 (1995–1996 Reg. Sess.) as amended Aug. 15, 1996, p. 3.)

Review of the legislative history therefore shows the Legislature intended that the Mitigation Fee Act would allow a developer to challenge a fee, dedication, reservation or other exaction imposed on a development project and obtain a refund where the exaction exceeded the cost or burden of the project. Accordingly, an exaction constitutes an "other exaction" within the meaning of the Mitigation Fee Act only where the exaction was (1) imposed by a local agency as a condition of approval of a development project; and (2) for the purpose of "defraying all or a portion of the cost of public facilities related to the development project." (§ 66000, subd. (b); see *Barratt, supra*, 37 Cal.4th at p. 696.)

### *Other Decisions*

Our interpretation of the term "other exaction" in sections 66020 and 66021 is also supported by other decisions construing those sections.

In *Barratt*, the developer sought, under section 66020, a refund of allegedly excessive building permit and plan review fees charged by the City of Rancho Cucamonga in connection with a residential subdivision. (*Barratt, supra*, 37 Cal.4th at p. 692.) The trial court sustained the city's demurrer without leave to amend on the ground that the developer "could not obtain a refund under section 66020 because building permit and plan review fees are not development fees within the meaning of that section . . . ." (*Barratt, supra*, at p. 693.) The California Supreme Court agreed, stating that "the building permit and plan review fees were not made 'in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project . . . .' (§ 66000, subd. (b).) They were not 'fees imposed on development projects in order to finance public improvements or programs that bear a "reasonable relationship" to the development at issue.' [Citation.]" (*Barratt, supra*, 37 Cal.4th at p. 696.) The court further stated, "In short, a fee does not become a 'development fee' simply because it is made in connection with a development project. [Citations.]" (*Id.* at p. 699.)

Thus, a developer's protest to a "$33,200 art in public places exaction" imposed on a condominium project was deemed not to be a "development exaction" subject to review under the Mitigation Fee Act. (*Ehrlich, supra*, 12 Cal.4th at pp. 863, 886.) The California Supreme Court found that "the

requirement to provide either art or a cash equivalent thereof is more akin to traditional land-use regulations imposing minimal building setbacks, parking and lighting conditions, landscaping requirements, and other *design* conditions such as color schemes, building materials and architectural amenities." (*Id.* at p. 886.)

In *Fogarty*, the plaintiffs applied to develop a subdivision in the City of Chico. (*Fogarty, supra*, 148 Cal.App.4th at p. 540.) After the city council voted to reduce the density of the proposed subdivision, the plaintiffs filed a letter of protest pursuant to section 66020, followed by a petition in the trial court. (*Fogarty*, at p. 541.) The court sustained the city's demurrer on the ground that the petition was time-barred under the 90-day limitations period of section 66499.37. (*Fogarty*, at p. 541.) On appeal, the appellate court determined that the term "exaction" in section 66020 "does not include land use restrictions, which are not any form of payment." (*Fogarty*, at pp. 543–544.) Consequently, the court concluded that the cause of action did not "arise under the [Mitigation] Fee Act, and the plaintiffs' attempt to invoke its protest procedure and extended limitations period was ineffectual. Their petition was therefore untimely served on defendant City under the limitations period of the [Subdivision] Map Act." (*Id.* at p. 544.)

 Thus, other decisions support our determination that not all exactions imposed by a public entity on a development project constitute an "other exaction" within the meaning of sections 66020 and 66021. The purpose of the exaction—whether it is intended to "defra[y] all or a portion of the cost of public facilities related to the development project" (§ 66000, subd. (b))—must be scrutinized to determine if the 180-day limitations period provided by section 66020, subdivision (d)(2) applies to a developer's action challenging the exaction.

### 4. Section 66020, Subdivision (d)(2) Does Not Apply to Trinity's Action

Having determined that an exaction constitutes an "other exaction" within the meaning of sections 66020, subdivision (d) and 66021 only if it meets two criteria: (1) the exaction is imposed by a local agency as a condition of approval of a development project; and (2) for the purpose of "defraying all or a portion of the cost of public facilities related to the development project" (§ 66000, subd. (b); see *Barratt, supra*, 37 Cal.4th at p. 696), we further determine that the below market housing requirement imposed by the City as a condition of approval of the Trinity Park development does not constitute an "other exaction" with the meaning of sections 66020 and 66021.

The purpose of the below market housing requirement, as set forth in Municipal Code section 19.66.010, "is to enhance the public welfare by

ensuring that future housing development contributes to the attainment of the housing goals set forth in the general plan of the city of Sunnyvale by increasing the production of residential units affordable by households of very low, low and moderate income." Neither the language of the ordinance nor the matters subject to judicial notice demonstrate that the below market housing requirement imposed by the City on residential developments of more than nine units is intended to "defra[y] all or a portion of the cost of public facilities related to the development project." (§ 66000, subd. (b); see *Barratt, supra,* 37 Cal.4th at p. 696.) Furthermore, the face of Trinity's complaint does not allege that the City's below market housing requirement serves that purpose. In light of the express language of the City's below market housing ordinance, we believe that amendment of the complaint to cure this defect is not reasonably possible. (*Campbell v. Regents of University of California, supra,* 35 Cal.4th at p. 320.)

Accordingly, we determine that the requirement that Trinity sell five houses in the Trinity Park development at below market rates as a condition of subdivision approval cannot be construed to constitute an exaction within the meaning of sections 66020 and 66021. Like the plaintiffs in *Fogarty, supra,* 148 Cal.App.4th at pages 543–544, Trinity's attempt to invoke the protest procedure and the limitations period provided by sections 66020 and 66021 was therefore ineffectual. Consequently, the 180-day limitations period provided by section 66020, subdivision (d)(2) does not apply in this case.

In its briefing, Trinity relies on *Williams Communications v. City of Riverside* (2003) 114 Cal.App.4th 642 [8 Cal.Rptr.3d 96] (*Williams*) to support its argument that its complaint was timely filed under section 66020, subdivision (d)(2). In *Williams,* the City of Riverside and Williams Communications entered into a license agreement allowing the company to install fiber optic cable in city streets in exchange for a payment of $750,103. (*Williams, supra,* 114 Cal.App.4th at p. 645.) The company made the payment and then filed an action claiming a right to recover the allegedly illegal payment under the Mitigation Fee Act (§ 66000 et seq.). The issue on appeal was whether the trial court had properly ruled that the Mitigation Fee Act was inapplicable because the " 'City did not purport to impose the subject license fee on plaintiff to mitigate or defray the cost of any alleged impacts on public improvements or facilities.' " (114 Cal.App.4th at p. 647.)

The *Williams* court agreed that the license fee was not imposed to mitigate or defray the cost of the public impact of the project. However, relying on the dictionary definition of "exaction" as "a 'compensation arbitrarily or wrongfully demanded,' " the court determined that the license fee could be challenged under the Mitigation Fee Act because the term " 'other exaction' " in section 66020, subdivision (a) means "any unlawful charge," including the

license fee that the company argued was unlawful under the California Telecommunications Infrastructure Development Act, section 50030. (*Williams, supra*, 114 Cal.App.4th at pp. 658–659.)

We do not rely on the dictionary definition of "exaction" because we believe, as we have discussed, that the statutory language of the relevant provisions of the Mitigation Fee Act and the legislative history of sections 66020 and 66021 show that the Legislature intended that the exactions that may be protested under the Mitigation Fee Act are those exactions imposed for the purpose of "defraying all or a portion of the cost of public facilities related to the development project." (§ 66000, subd. (b); see *Barratt, supra*, 37 Cal.4th at p. 696.)

At oral argument, Trinity emphasized three additional decisions as support for its contention that its action against the City was timely filed under sections 66020 and 66021, including this court's decision in *Branciforte* and the decisions in *Palmer/Sixth Street Properties, L.P. v. City of Los Angeles* (2009) 175 Cal.App.4th 1396 [96 Cal.Rptr.3d 875] (*Palmer*) and *Building Industry Assn. of Central California v. City of Patterson* (2009) 171 Cal.App.4th 886 [90 Cal.Rptr.3d 63] (*Building Industry Assn.*). These decisions offer no assistance to Trinity because they are all distinguishable.

In *Branciforte*, the development at issue was subject to a local ordinance requiring "a subdivider to dedicate land and/or pay in-lieu fees as a condition of approval." (*Branciforte, supra*, 138 Cal.App.4th at p. 921.) The developer paid the required park fees, but sought a credit against the park fees for the private open space provided by the development. (*Id.* at p. 923.) During the litigation over the park fees, the City of Santa Cruz appealed from "the superior court's issuance of a writ of mandate directing the City to allow a private open space credit against the park fees exacted from respondent Branciforte Heights . . . ." (*Branciforte, supra*, 138 Cal.App.4th at p. 919.) This court determined that "[t]he question before us is whether the statute of limitations provided by the Subdivision Map Act (§ 66499.37) or the Mitigation Fee Act (§ 66020) applies to this mandate action." (*Id.* at p. 926.) Because the developer had complied with the fee protest procedures provided by section 66020, this court concluded that section 66020 provided the applicable limitations period. (*Branciforte*, at p. 928.) No issue was raised as to the meaning of the phrase "other exaction" in sections 66020 and 66021 or the limitations period that applies to a challenge to a below market housing requirement imposed as a condition of subdivision approval.

Although the decision in *Palmer* involved the City of Los Angeles's affordable housing ordinance, that decision also does not aid Trinity. In *Palmer*, the developer challenged the City of Los Angeles's requirement that

the developer comply with the city's affordable housing ordinance as a condition of development approval on the ground that the affordable housing requirements "conflict[] with and [are] preempted by the vacancy decontrol provisions of the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.50 et seq. . . .)." (*Palmer, supra,* 175 Cal.App.4th at p. 1399.) The Costa-Hawkins Rental Housing Act "allows residential landlords to set the initial rent levels at the commencement of a tenancy." (*Ibid.*) The *Palmer* court agreed that certain provisions of the affordable housing ordinance were preempted by the Costa-Hawkins Rental Housing Act, and did not reach the issue of whether the in-lieu fee provision of the affordable housing ordinance also violated the Mitigation Fee Act. (175 Cal.App.4th at pp. 1410–1412, fn. 15.) Again, no issue was raised as to the meaning of the term "other exaction" in sections 66020 and 66021 or the applicable statute of limitations.

The decision in *Building Industry Assn.* also involved an affordable housing requirement, but is similarly distinguishable. The facts in *Building Industry Assn.* involved the City of Patterson's requirement that a subdivision developer satisfy the city's "affordable housing objectives." (*Building Industry Assn., supra,* 171 Cal.App.4th at p. 890.) At the time the plaintiff developer's subdivision maps were approved, the City of Patterson allowed developers to pay an in-lieu fee of $734 per house instead of building affordable housing. (*Id.* at p. 888.) The in-lieu fee was later increased to $20,946 per unit. (*Id.* at p. 893.) The subdivision developer filed an action that challenged the "City's imposition of the $20,946 per unit exaction as well as City's characterization that it was an increase in the affordable housing in-lieu fee." (*Ibid.*) The trial court found in favor of the City of Patterson but the ruling was reversed on appeal. (*Id.* at p. 899.) The appellate court determined that the increase in the affordable housing in-lieu fee was not " 'reasonably justified' " because there was not a "reasonable relationship between the amount of the fee, as increased, and 'the deleterious public impact of the development.' [Citation.]" (*Id.* at p. 898.) Again, no issue was raised as to the meaning of the term "other exaction" in sections 66020 and 66021 or the applicable statute of limitations.

Thus, the decisions on which Trinity relies do not alter our determination that, as we have discussed, the statutory language of the relevant provisions of the Mitigation Fee Act and the legislative history of sections 66020 and 66021 demonstrate that the Legislature intended that the exactions that may be protested under the Mitigation Fee Act are those exactions imposed for the purpose of "defraying all or a portion of the cost of public facilities related to the development project." (§ 66000, subd. (b); see *Barratt, supra,* 37 Cal.4th at p. 696.) Since there is no reasonable possibility that the below market housing requirement imposed on the Trinity Park development was imposed for that purpose, we conclude that sections 66020 and 66021 do not provide the limitations period that is applicable to Trinity's action.

### 5. *Trinity's Action Is Time-barred Under Sections 66497.37 and 65009, Subdivision (c)(1)(E)*

 Since we have determined that the 180-day limitations period provided by sections 66020 and 66021 is inapplicable to Trinity's action, we next consider whether Trinity's complaint was timely filed under the limitation periods provided by either section 66499.37 or section 65009, subdivision (c)(1)(E). The general rule is that the applicable statute of limitations depends on "the nature of the cause of action, i.e., the 'gravamen' of the cause of action." (*Hensler, supra,* 8 Cal.4th at p. 22.)

The allegations of Trinity's complaint show that the gravamen of its causes of action against the City is a challenge to the validity of the below market housing requirement imposed on the Trinity Park development, as a condition of subdivision approval and the issuance of development permits, and a request for relief from the below market housing condition. In particular, we note the following allegations in the complaint: "Plaintiffs were informed that the City would require submission to the City's BMR housing demands as a mandatory condition to the City's acceptance, consideration, or approval of the plaintiffs' application for development permits or approvals necessary [for] City plan reviews and approvals for this Project . . . ." The complaint further states, "To the extent feasible, plaintiffs questioned the City's requirement that the Project be subject to the City's exactions of BMR housing units . . . as conditions of development processing or approvals, but were required to submit to these exactions in order for the necessary development applications to be processed and approved. [¶] Plaintiffs eventually obtained the City's final approvals for the development of the site with 42 new homes, subject to various conditions of approval, including the disputed BMR exactions."

As we have discussed, section 66499.37 is the statute of limitations that applies to an action challenging the decision of a "legislative body concerning a subdivision, or of any of the proceedings, acts, or determinations taken, done, or made prior to the decision, or to determine the reasonableness, legality, or validity of any condition attached thereto . . . ." In other words, " '[r]egardless of the nature of or label attached to the action challenging the legislative body's subdivision-related decision, the action is governed by section 66499.37.' " (*Friends of Riverside's Hills, supra,* 168 Cal.App.4th at p. 750.)

 Since it appears on the face of Trinity's complaint that its action challenges the City's decision to impose a below market housing requirement on the Trinity Park subdivision development as a condition of obtaining approval of the development, we find that section 66499.37 is the applicable

statute of limitations. As stated in the statute, the 90-day limitations period provided by section 66499.37 runs from the date of the decision of the legislative body that is being challenged. Here, the date of that decision is no later than April 17, 2008, the date of recording of the "Below Market Rate Developer Agreement" requiring Trinity to satisfy the below market housing requirement imposed as a condition of the approval of the Trinity Park development project. We may take judicial notice of the April 17, 2008 recording date as a fact that is not reasonably subject to dispute. (Evid. Code, § 452, subd. (h).) Since Trinity's complaint was filed on December 17, 2009, more than one year after the date of the challenged decision, the complaint was untimely filed under section 66499.37.

We further find that the complaint was untimely filed under the other applicable statute of limitations, section 65009, subdivision (c)(1)(E). As we have discussed, section 65009, subdivision (c)(1)(E) provides a 90-day limitation period for actions challenging "the grant, denial, or imposition of conditions on a variance or permit." (*Travis, supra,* 33 Cal.4th at pp. 765–766.) Since the gravamen of Trinity's causes of action also includes its challenge to the imposition of the below market housing condition on the development permit for the Trinity Park development, the 90-day limitations period of section 65009, subdivision (c)(1)(E) applies to its action against the City. Trinity's failure to serve and file its action "within 90 days after the legislative body's decision" (*ibid.*) imposing the below market housing condition (a decision that occurred no later than the Apr. 17, 2008, the date of recording of the "Below Market Rate Developer Agreement") is therefore fatal to its claim.

Having reached the conclusion that the face of the complaint and matters subject to judicial notice show that Trinity's action is time-barred under either section 66499.37 or section 65009, subdivision (c)(1)(E), and further concluding that Trinity cannot show a reasonable possibility that any amendment could cure the defect in the complaint (*Campbell v. Regents of University of California, supra,* 35 Cal.4th at p. 320), we will affirm the judgment of dismissal. Due to our conclusions, we need not address the parties' other contentions regarding the merits of the appeal, which include Trinity's claims that the complaint states a valid cause of action for declaratory relief and the City's imposition of the below market housing requirement as a condition of subdivision approval is invalid, as well as the City's argument that Trinity's action is barred on the alternative grounds of waiver, estoppel, and laches.

However, we emphasize that our decision is limited to the facts of this case, where there was no showing that the affordable housing requirement imposed as a condition of subdivision approval and issuance of a development permit was intended to serve the purpose of "defraying all or a portion

of the cost of public facilities related to the development project." (§ 66000, subd. (b); see *Barratt, supra*, 37 Cal.4th at p. 696.)

## V. DISPOSITION

The judgment of dismissal is affirmed. Costs on appeal are awarded to respondent City of Sunnyvale.

Mihara, J., and McAdams, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.